# McARTHUR & Others *v.* SCOTT & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Argued January 28, 29, 1884.—Reargued April 7, 8, 9, 1884.—Decided March 2, 1885.

Words in a will, directing land to be conveyed to or divided among remaindermen at the expiration of a particular estate, are to be presumed, unless clearly controlled by other provisions, to relate to the beginning of enjoyment by remaindermen, and not to the vesting of the title in them.

A testator devised lands and personal property to his executors and their successors, and their heirs, in trust; and directed that the income, until his youngest grandchild, who might live to be twenty-one years of age, should arrive at that age, should be divided equally among the testator's children, or the issue of any child dying, and among the grandchildren also as they successively came of age; that "after the decease of all my children, and when and as soon as the youngest grandchild shall arrive at the age of twenty-one years," the lands should be "inherited and equally divided between my grandchildren *per capita*," in fee, and that "in like manner" the personal property should "at the same time be equally divided among my said grandchildren, share and share alike *per capita*;" and that if any grandchild should have died before the final division, leaving children, they

should take and receive *per stirpes* the share which their parent would have been entitled to have and receive if then living ; and provided that any assignment,-mortgage or pledge by any grandchild of his .share should be void, and the executors, in the final division and distribution, should convey and pay to the persons entitled under the will. *Held,* That the executors took the legal title in fee, to hold until the final division ; and that the trusts were imposed upon them as executors. *Held, also,* That all the grandchildren took equitable vested remainders, opening to let in those born after the testator's death, and subject to be divested only as to any grandchild who died before the expiration of the particular estate, leaving issue, by an executory devise over to such issue.

Under the statute of Ohio of December 17, 1811, providing that no estate in lands "shall be given or granted by deed or will to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being, at the time of making such deed or will," a devise of a vested remainder to grandchildren of the testator, with an executory devise over of the share of any grandchild, who shall have died, leaving children, before the coming of age of the youngest grandchild, to the children of such deceased grandchild, is valid, so far, at least, as concerns the grandchildren, though born after the testator's death.

All persons interested in a suit in equity, and whose rights will be directly affected by the decree, must be made parties to the suit, unless they are too numerous, or some of them are out of the jurisdiction, or not in being ; and in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all.

A trustee having large powers over the trust estate, and important duties to perform with respect to it, is a necessary party to a suit by a stranger to defeat the trust.

A court of probate has inherent power, without specific statute authority, to grant administration limited to the defence of a particular suit.

A citizen of Ohio devised lands in that State to his three executors in fee. in trust, to pay the income to his children and grandchildren until the youngest grandchild who should live to be twenty-one years of age should arrive at that age and then to convey the remainder to his grandchildren in equal shares ; and provided that if any executor should die, resign. or refuse to act, a new executor, to act with the others, should be appointed by the court of probate. The will was admitted to probate, upon the testimony of the attesting witnesses, under the statute of Ohio of February 18, 1831, and three executors were appointed and acted as such. Two of them afterwards resigned_and their resignations were accepted by the court of probate. A bill in equity to set aside the will and annul the probate was then filed, under that statute, by one of the children against the other children and all the grandchildren then in being, alleging that they were the only persons specified or interested in the will, and were the only heirs and personal representatives of the deceased ; those grandchildren being infants, one of the children was appointed guardian *ad litem* of each ; the third executor, who was one of the children made defendants in their own right,

and who was not made a party as executor or trustee, and did not answer as such, resigned, and the resignation was accepted by the court of probate, pending that suit, and no other executor, trustee, or administrator with the will annexed was made a party ; it was found by a jury that the instrument admitted to probate was not the testator's will, and a decree was entered setting aside the will and annulling the probate. Partition was afterwards decreed among the heirs, and they conveyed portions of the lands set off to them to purchasers for value and without actual notice of any adverse title. *Held,* That the decree annulling the probate was absolutely void as against grandchildren afterwards born, and that they were entitled to recover their shares under the will against the heirs and purchasers, and might, if the parties were citizens of different States, bring their suit in the Circuit Court of the United States.

*Holt* v. *Lamb,* 17 Ohio St. 374, followed.

This is a bill in equity by the children of Allen C. McArthur, a son of General Duncan McArthur, to enforce a trust and establish a title in fee in lands in Ohio under the will of their grandfather.

The case was heard in the Circuit Court on the bill and answers, by which it appeared to be as follows:

Duncan McArthur, of the County of Ross and State of Ohio, died on May 12, 1839, leaving an instrument in writing, dated October 30, 1833, purporting to be duly executed and attested as his last will, by which he empowered and directed his executors to sell and convey all his lands not described, devised his home farm to his wife for life, and other lands not now in question to Samson Mason and Samuel F. Vinton, in trust for the benefit of his five surviving children and their heirs, made various bequests, and further provided as follows:

[15.] "Item. It is my will and direction that my lands and lots not otherwise herein disposed of, lying and being in the counties of Ross and Pickaway, shall not be sold ; but the lands and lots, together with the lands herein devised to my said wife, after her death, shall be by my executors leased or rented out to the best advantage, for improvements to be made thereon, or for money rents, until the youngest or last grandchild which I now have, or may hereafter have, the lawfully begotten child of either of my said sons Allen C. or James McD., or of my daughters Effie, Eliza Ann, or Mary, who may live to be twenty-one years of age, shall arrive at that age.

[16.] "Item. And it is my further will and direction that, after the several sums of money hereinbefore devised shall have been in all cases first paid and deducted therefrom, as the same shall from time to time become due and payable, the overplus or residue of the rents and profits of the lands so to be rented or let, and of the lots not otherwise disposed of in the counties of Ross and Pickaway, and of the dividends arising from the stock owned by me at the time of my death, and of such stocks as shall be purchased by my said executrix and executors, shall be annually divided equally among my children and grandchildren who may be the age of twenty-one years when such divisions shall be made; which division shall be made until the power of my executors to lease said lands shall terminate, viz., until the aforesaid youngest grandchild above designated and described shall arrive at the age of twenty-one years. And said annual division of rents and profits and dividends of stock aforesaid shall be made among and between said Allen C., James McD., Effie, Eliza Ann and Mary, and their children, share and share alike, *per capita*, the said children to come in for a share in the annual division when they shall respectively attain the age of twenty-one years, and not before; and in case of the death of either of my said last-named sons or daughters, leaving a lawful child or children under age, the child or children of such deceased parent shall take *per stirpes*, for their education and maintenance, the dividends in such division which such deceased parent would, if living, have been entitled to receive. And when such child or children of such deceased parent shall respectively come of the age of twenty-one years, he, she or they shall no longer take *per stirpes*, but shall then and from thenceforth take in said annual division his, her or their share *per capita;* but the coming of one of such children of any such deceased parent to the age of twenty-one years shall not bar or preclude those children of such parent who may be still in their minority from continuing to take the full share, *per stirpes*, of such deceased parent. And in said annual division the children of my daughter Margaret Campbell Kercheval, deceased, or the legal issue of such said children as may

be deceased, shall annually for the period of ten years after my death take and receive, *per stirpes*, one share as the representatives of their deceased mother, to be equally divided among them; and at the expiration of ten years after my death the said children of my said daughter Margaret Campbell shall not thenceforth take or be entitled to any part of said division; but the said division shall thenceforth be made among my said children, Allen C., James McD., Effie, Eliza Ann, Mary, and their children, exclusively, in the manner hereinbefore directed, intending hereby to exclude altogether from said division the children of my deceased daughter Helen Mar.

[17.] "Item. It is my further will and direction that after the decease of all my children now living, and when and as soon as the youngest or last grandchild, in the next preceding clause but one of this will designated and described, shall arrive at the age of twenty-one years, all my lands and lots not otherwise disposed of in said counties of Ross and Pickaway, and all my other lands, if any shall remain unsold at that time, shall be inherited and equally divided between my grandchildren *per capita*, the lawful issue of my said sons and daughters, Allen C., James McD., Effie, Eliza Ann, and Mary, for them and their heirs forever, to have and to hold, or to sell and dispose of the same at their will and pleasure; and in like manner all the stocks belonging to my said estate, whether invested before or after my death, shall at the same time be equally divided among my said grandchildren, share and share alike, *per capita;* but it is to be understood to be my will and direction that if any grandchild aforesaid shall have died before said final division is made, leaving a child or children lawfully begotten, such child or children shall take and receive *per stirpes* (to be equally divided between them) the share of my said estate, both real and personal, which the parent of such deceased child or children would have been entitled to have and receive if living at the time of such final distribution. In making this last and final division and distribution of my lands and stocks, I have excluded the children of my deceased daughters Helen Mar, late wife of Alexander Bourne, and Margaret Campbell, late

wife of Robert Kercheval, deceased, their parents having in my opinion received their full share and portion of my estate.

[18.] "Item. And it is further my will that my said children or grandchildren, or any of them, by their own act or in conjunction with the husband of any of them, shall not have power or authority to assign, transfer, pledge, mortgage or encumber in any way his or her or their share of the annual dividends or profits of my said estate herein above devised ; but every such assignment, transfer, pledge, mortgage or encumbrance, by any instrument or device whatsoever, shall be wholly null and void, and the proper receipt of such child or grandchild, or his, her or their lawful authorized guardian, shall alone be a discharge to my said executors ; and in like manner every conveyance, assignment, transfer, pledge, mortgage or encumbrance, by any instrument or device whatsoever, made by any one of my said grandchildren or their legal representatives, by any act or deed of him or her or them, or in conjunction with the husband of any of them, whereby his, her or their share of said lands and stocks in the final distribution thereof shall be in any way affected or disposed of, shall be wholly null and void. And in such final distribution of my lands, it is my direction that deeds of partition thereof shall be made to and in the names of those who may be thus entitled thereto, and in the name and for the use of no other person whatsoever, which deeds of partition shall be executed by my executors for the time being ; and to enable my executors the more effectually to execute the powers and duties by this will devolved upon them, and to protect my said children and grandchildren against fraud and imposition, I hereby devise to my said executrix and executors, and the successors of them, all of said lands so directed to be leased and finally divided as above, and to their heirs, in trust for the uses and purposes and objects expressed in this my will, and the performance of which is herein above directed and prescribed, to have and to hold the title thereof till such final division or partition thereof, and no longer. And it is my further direction that in the final division of the stocks aforesaid the executors in whose name the same may then be vested in trust shall assign and transfer to such grandchild, or

his or her legal representatives, the share or portion of such stock belonging and coming to such grandchild or his or her legal representatives, so that the same shall be vested in the name of such grandchild or legal representatives; and the proper receipts of such grandchild or legal representatives, or of his or her or their duly authorized guardian, shall alone discharge the executor or executors in whom the stocks aforesaid shall or may then be vested."

[23.] "Item. It is my direction that my executors shall give bond and security for faithful administration, as in other cases."

[24.] "Item. And finally, for the purpose of carrying all and singular the provisions of this my last will and testament into effect, I do hereby nominate and appoint my wife, Nancy McArthur, executrix, and my friends, Presley Morris and William Key Bond, Esquires, of Ross County, my executors; and in case any one or more of the above named executors shall die, resign, or refuse to act and qualify according to law, it is my will and request that the Court of Common Pleas for said County of Ross for the time being, or such other court as may hereafter be constituted and authorized to do testamentary business, shall nominate and appoint a suitable person or persons, who will qualify and act, to supply the place or places of the person or persons by me herein named and appointed as my executors, and who may not qualify and act as such, or who may, after accepting and qualifying, die, refuse or neglect to act; and such person or persons so to be nominated and appointed by said court shall not be administrators *de bonis non* with the will annexed, but the nomination by the court shall be in execution of this will, as though the same individual had been nominated by this my will to fill a vacancy, or as though a power of nomination had been vested in some person or individual herein named; and such person so nominated shall act and be executor with my other executors for the time being, it being my intention that the duties herein required shall always be performed by at least three executors, that being the number by me herein named and appointed."

A transcript of a record of the Court of Common Pleas of

the county of Ross and State of Ohio (referred to in the bill, and annexed to it) showed the following proceedings:

On May 6, 1839, the alleged will of Duncan McArthur was produced to the court, and proved by the oaths of the attesting witnesses, and ordered to be recorded. On the next day, the court granted letters testamentary to Morris and Bond, the surviving executors named in the will, and to Effie McArthur Coons, an additional executrix then appointed by the court, pursuant to the will, in the place of the testator's wife, who died before him; and the three executors so appointed were qualified and gave bond with sureties as required by law. On June 21, 1839, Bond tendered his resignation of the office of executor, and it was accepted by an order which recited that the court was of opinion that good cause had been shown for such resignation. On June 25, 1839, Morris likewise resigned, and his resignation was accepted by a similar order. On October 22, 1839, "Effie McA. Coons having this day tendered her resignation to the court of her office of one of the executors of the last will of the late Duncan McArthur, deceased, late of Ross County, it is ordered by the court that the said resignation be, and the same is hereby, accepted, and the said resignation ordered to be recorded." On December 4, 1839, letters of administration on the estate of Duncan McArthur were granted to William McDonald, and he was qualified and gave bond accordingly.

A transcript of a record of the same court, sitting in chancery, (set forth and referred to in the answers), showed the following proceedings:

On July 8, 1839, Allen C. McArthur, the eldest son of the testator, filed a bill before the judges of the court, sitting in chancery, setting forth the death of Duncan McArthur, the probate of the instrument aforesaid as his will by the oaths of the witnesses, the appointment in that instrument of his wife and Morris and Bond to be executors, the death of the wife before the testator, and the nomination and appointment by the court of Mrs. Coons to act as executrix in her place; and alleging that Morris, Bond and Mrs. Coons took upon themselves the executorship of the will; that Bond and Morris, at

the then present term of the court, had severally resigned, and their resignations had been accepted; and "that by the provisions of the said instrument in writing all acts to be done by the executors require the concurrence of three executors, and tnat no suitable persons can be found whom the court are willing to appoint executors of the said will, and who are able to give the bonds required by the said instrument or the law of the land."

That bill "further insists and states that the said instrument is void and of none effect, because it is wholly impracticable and cannot be carried into effect; because many of its provisions are impracticable and cannot be carried into effect; because it tends to establish perpetuities, and does establish such perpetuities, which are contrary to the genius of our institutions and the spirit of our people and their laws, and indeed contrary to the common law;" and "that the said instrument in writing is void, because its provisions or many of them are in violation of and contrary to the common and statute law;" and also alleged that Duncan McArthur, at the time of executing it, was of insane memory and not possessed of a testamentary capacity; and that it was never legally executed as, and was not, his last will and testament.

That bill further alleged that "the only persons who have an interest in the said instrument in writing" were the complainant; Duncan McArthur's other four children, James McD. McArthur, Effie McA. Coons, Eliza Ann Anderson and Mary Trimble, and the husbands of Mrs. Anderson and Mrs. Trimble; three minor children of James McD. McArthur, a minor son of Mrs. Coons, and a minor son of Mrs. Anderson; a minor son and an adult daughter (with her husband) of Margaret C. Kercheval, a deceased daughter of Duncan McArthur; Alexander Bourne, husband of Helen M. Bourne, another deceased daughter of Duncan McArthur; one adult and two minor sons of Mrs. Bourne; and Samson Mason and Samuel F. Vinton, as devisees in trust of lands not now in question.

That bill further alleged " that the aforesaid persons are the only heirs and personal representatives of the said Duncan McArthur, and that they are also the only persons specified in

the said instrument in writing, claimed as the will of said Duncan McArthur;" and made them defendants; and prayed that an issue might be directed to be made up whether that instrument was the last will of Duncan McArthur or not, and that it might be set aside as void, and for further relief.

On July 10, 1839, the complainant in that cause had leave to amend his bill, and the cause was continued. On October 7, 1839, he filed a supplemental bill, alleging that a daughter had been born to Mrs. Trimble, and was a granddaughter of Duncan McArthur, and as such entitled to a provision under and an interest in the supposed will, and praying that she might be made a defendant.

Among the defendants named in the bill and supplemental bill in that cause were all the children and grandchildren of Duncan McArthur who were in existence at any time during the pendency of that suit; and due service of process was made on all of them. Mason and Vinton, trustees, were served with process, and severally filed answers, declining to accept the trust conferred upon them by the will, and disclaiming all interest in the lands devised to them.

On October 22, 1839, the following proceedings were had in that cause: The court appointed James McD. McArthur guardian *ad litem* of his three minor children; Mrs. Coons guardian *ad litem* of her minor son; Mrs. Trimble's husband guardian *ad litem* of their minor daughter; Mrs. Anderson's husband guardian *ad litem* of their minor son, and of Mrs. Bourne's two minor sons; and Mrs. Kercheval's son-in-law guardian *ad litem* of her minor son; and an acceptance of each appointment was filed.

On the same day, answers to that bill were filed in behalf of all the defendants. The answers of the four children of the testator, James McD. McArthur, Mrs. Coons, Mrs. Anderson and Mrs. Trimble, and the husbands of the last two, as well as the answers of Mrs. Kercheval's daughter and son-in-law, and of Alexander Bourne and his adult son, severally stated that they admitted and confessed all the allegations of the bill. The answer of Mrs. Coons further stated that "since the filing of the same she has, to wit, at the present term of October, re-

signed the office and charge of executrix of the said supposed last will and testament of her deceased father, the late General Duncan McArthur, from a conviction of her inability to discharge the duties incumbent on her as such executrix, and the impossibility of procuring suitable associates agreeably to the provisions of the said instrument in writing." The several answers of the infant defendants by their guardians *ad litem* stated that they would neither admit nor deny the allegations of the bill, but left the complainant to prove them.

On the same day, the court ordered " that an issue at law be made up between the parties to try the validity of said will and to ascertain by the verdict of a jury whether said writing is the valid last will and testament of the said Duncan McArthur or not ; " and that in making up that issue the defendants file a declaration affirming it to be his will, and the complainant plead thereto that it is not his will.

On October 27 the defendants filed a declaration and the complainant a plea accordingly. On October 28 a jury was empanelled and sworn and returned a verdict that the instrument "is not the valid last will and testament of the said Duncan McArthur, deceased ;" and on the same day the court entered this decree :

"The jury to whom was committed for trial the issue made in pursuance of the order of the court, between the respondents and the complainant, whether the instrument filed and exhibited in this cause and purporting to be the last will and testament of the late Duncan McArthur, of Ross County, deceased, was or was not the valid last will and testament of the said Duncan McArthur, deceased, having returned their verdict that the said instrument in writing is not the valid last will and testament of the said Duncan McArthur, deceased ; and the court, having heard the arguments of counsel and being fully advised in the premises, are of opinion that the law and equity of the case are with the complainant, and do order, adjudge and decree that the said instrument in writing, filed and exhibited by the complainant, purporting to be the last will and testament of the said Duncan McArthur, deceased, and admitted to probate as such last will and testament in the Court of Common Pleas of

this county, be annulled, set aside and held for nought; and the infant defendants shall respectively have until they severally attain the full age of twenty-one years and six months thereafter, and the femes covert defendants shall respectively have until they are discovert and six months thereafter, to show cause against this decree. And it is further ordered by the court that the defendants pay the costs herein expended, taxed at forty dollars and twenty-five cents. The complainant's costs are taxed at thirty-three dollars and fifty-five cents. The defendants' costs are taxed at six dollars and seventy cents."

William McDonald, appointed on December 4, 1839, administrator of the estate of Duncan McArthur, as stated in the record annexed to the present bill and above mentioned, afterwards administered the entire personal estate of the deceased, and his final account was settled by the court on August 2, 1865.

Upon a petition for partition of all the real estate of which Duncan McArthur died seized, filed on April 2, 1840, by his daughter Mrs. Anderson and her husband, against Duncan McArthur's other four children, Allen C. McArthur, James McD. McArthur, Mrs. Coons, and Mrs. Trimble and her husband, and against the two children of his deceased daughter, Mrs. Kercheval, the Court of Common Pleas for Ross County, on April 17, 1841, made partition among them, one sixth part each to said Allen C. McArthur, Mrs. Coons, Mrs. Anderson and Mrs. Trimble, one sixth to the heirs of James McD. McArthur (who had died pending that suit), and one twelfth to each of the two children of Mrs. Kercheval.

Upon the rendition of the decree in partition, the parties thereto entered into possession of their shares, and afterwards made sales of portions thereof to purchasers for valuable consideration, and without actual notice of any adverse title or claim; and they, and other persons claiming under or through them, respectively occupied and improved the same for the period of thirty-four years and eleven months, and until the filing of the present bill, and during all that time their use and possession was distinct, continued, exclusive, actual and notorious, under a claim of title in fee simple, and adverse to the claims of all other persons.

After the decree setting aside the will, and before the filing of this bill, one of James McD. McArthur's children died under nine years of age, and another child was born to him; the son of Mrs. Coons died, unmarried and intestate, and she married William Allen and had a daughter by him; Mrs. Anderson had five more children born, of whom two died under eleven years of age; Mrs. Trimble's daughter married one Madeira, and died, leaving three children; and Allen C. McArthur, Duncan McArthur's eldest son, had five children born to him, four daughters and a son.

This son, also named Allen C. McArthur, was the youngest grandchild of Duncan McArthur who arrived at twenty-one years of age. He arrived at that age on March 4, 1875, after the death of all the children of Duncan McArthur; and he, together with his four sisters and their husbands, all being citizens of Illinois or of Kentucky, are the plaintiffs in the present bill, which was filed on March 17, 1876. An authentic copy of the will of Duncan McArthur, and of the original probate thereof, was recorded by the probate court in Pickaway County on February 11, 1876.

The defendants in this bill were all citizens of Ohio, and were the three surviving children of James McD. McArthur, the surviving daughter of Mrs. Effie McA. Allen, the four surviving children of Mrs. Anderson, the three children of Mrs. Madeira, and numerous purchasers of different parcels of land from the parties to the proceeding for partition.

The present bill (without mentioning the proceeding to annul the probate, set forth in the answers), alleged that, immediately after the death of Duncan McArthur, his five children, desiring to obtain for themselves the whole of his real and personal estate, and to deprive his grandchildren of all the provisions intended for them by his will, unlawfully combined and confederated with other persons, and, contriving to defraud the plaintiffs, procured and brought about the tender and acceptance of the resignations of the executors, and appropriated to their own use all his personal property, and, by means of the proceeding in partition above mentioned, divided all his lands among themselves, and conveyed parts of the same to

other persons, and, in defence of their fraudulent conspiracy
and doings, pretended that he died intestate, and they as his
children had inherited his lands. These allegations were denied
in the answers.

At the hearing upon bill and answers, the Circuit Court dis-
missed the bill, and the plaintiffs appealed to this court.

The cause was first argued in January, 1884. It was re-
argued in April, 1884, by order of the court.

*Mr. Lawrence Maxwell, Jr.*, for appellants at the first argu-
ment. *Mr. Maxwell* and *Mr. William M. Ramsey* for appel-
lants at the re-argument.

*Mr. Richard A. Harrison* for the appellees David H.
Scott, Administrator of William Allen, deceased, David
H. Scott, and Effie H. Scott, heirs at law of William Allen,
deceased, at the first argument; and also at the rehearing in
April.

*Mr. John W. Herron* for James M. Glenn, Trustee, appellee,
at the first hearing.

*Mr. W. T. McClintick* for Dr. C. A. Trimble and Anna T.
Madeira and others, heirs of Mary Trimble, deceased, appellees,
at the first hearing.

*Mr. Henry F. Page* for Johnson Caldwell, Lawrence Crook-
ham, Aristeus Hulse, Levi Luiz, Hepzibah Hulse, Sarah Flo-
rence, and others, appellees, at the first hearing.

*Mr. P. C. Smith* filed a brief on behalf of Jonas Hulse and
Samuel M. Owens, appellees.

It is not possible to report the substance of each of these
elaborate arguments without doing injustice to other cases.
Abstracts are given: (1) of the argument of appellants' coun-
sel; (2) of the argument of *Mr. Harrison;* (3) of so much of

the arguments of his associates, as supplemented his argument, or varied from, or was in conflict with, his positions.

*Mr. Maxwell* and *Mr. Ramsey* for appellants: (their brief was also signed by *Mr. Rufus King* and *Mr. S. J. Thompson*).— I. *As to the question of perpetuities.* 1. The case is governed by the statute, passed December 17, 1811,* which has since been in force in Ohio continuously. 2 Chase's Statutes of Ohio, 762. It is not disputed that the common law was in force in Ohio prior to the passage of this act, *Railroad Co.* v. *Keary*, 3 Ohio St. 201. The policy of Ohio in favor of issue and descendants is shown, by this act, to be more liberal than the common law. In Ohio an estate tail is not alienable by the donee in tail, *Pollock* v. *Speidel*, 17 Ohio St. 439; nor, during his life, by his issue, *Dart* v. *Dart*, 7 Conn. 250, approved in *Pollock* v. *Speidel*. Therefore, an estate tail given, as it may be, to the unborn issue of a person in being, is, in Ohio, inalienable during three successive generations, whereas, at the common law, land could never be tied up longer than two generations and twenty-one years. On the part of the courts of the State, the same liberal tendency is disclosed. In *Gibson* v. *McNeely*, 11 Ohio St. 131, a doubtful clause of a will was construed as giving a life estate to children, with remainder in tail to their issue, rather than as making the children donees in tail; and upon the very ground, as stated by the court, that such construction would better effect the desire of the testator to restrain alienation as long as possible. The Supreme Court of Ohio has never yet declared a devise void for remoteness. The

---

* "AN ACT to restrict the entailment of real estate.

SECTION 1. *Be it enacted by the General Assembly of the State of Ohio,* That from and after the taking effect of this act, no estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this State, shall be given or granted by deed or will to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and that all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. This act to take effect and be in force from and after the first day of June next."

following cases show to what extent it has gone to uphold wills against that charge. *Stevenson* v. *Evans*, 10 Ohio St. 307; *Gibson* v. *McNeely*, 11 Ohio St. 131; *Turley* v. *Turley*, 11 Ohio St. 173; *Brasher* v. *Marsh*, 15 Ohio St. 103.—The act of 1811 is a restraining, not an enabling act. It does not supersede the common law. It modifies it, by cutting off altogether the period, within which, after lives in being, an estate must vest, except in favor of the immediate issue or descendants of persons in being at the making of the will; so that there may be no devise except to persons in being or to their immediate issue or descendants, leaving the common-law rule intact with respect to such issue or descendants. The statute does not contemplate the necessity of a precedent particular estate to the person to whose immediate issue or descendant the estate is subsequently limited. There need be no particular estate, or if there be one it may be granted to some one other than the one to whose immediate issue the ultimate estate is given, and still the grant is valid under the statute.—2. The provision for children of predeceased grandchildren, if illegal, does not affect the validity of the devise to complainants. It is settled that the words "immediate issue" in this statute mean children, and "immediate descendants" include all to whom, under the statute of descents, an inheritable estate would descend immediately. *Turley* v. *Turley*, 11 Ohio St. 173. The complainants are the immediate issue of persons in being at the making of the will, and are therefore within the terms of the statute, and the time for final distribution is within twenty-one years after lives in being. If the complainants, being immediate issue of persons in being at the making of the will, are, under its terms, and necessarily within twenty-one years after lives in being, entitled each to an ascertainable aliquot part of the lands in suit, they may recover; and it is no answer that other portions of those lands are limited to others too remotely. *Wilkinson* v. *Duncan*, 30 Beav. 111; *Griffith* v. *Pownall*, 13 Sim. 393; *Storrs* v. *Benbow*, 3 DeG. M. & G. 390, and 2 Myl. & K. 46; *Cattlin* v. *Brown*, 11 Hare, 372; *Goodier* v. *Johnson*, 18 Ch. D. 441; *Darling* v. *Rogers*, 22 Wend. 483; *Kane* v. *Gott*, 24 Wend. 641; *Savage*

v. *Burnham*, 17 N. Y. 561, 576; *Downing* v. *Marshall*, 23 N. Y. 366; *Adams* v. *Perry*, 43 N. Y. 487; *Purdy* v. *Hayt*, 92 N. Y. 446; *Lowry* v. *Muldrow*, 8 Rich. Eq. 241. Counsel for appellees rely upon *Leake* v. *Robinson*, 2 Meriv. 363 and the cases which follow it. Those cases do not decide that a devise to two classes, or individuals, void as to one is, therefore, void as to the other; or that if the entire intention of the testator with respect to any subject matter may not be lawfully carried out, it must, therefore, fail altogether; or that if a gift includes in one description persons capable and persons incapable, by reason of remoteness, it is, therefore, invalid as to all; on the contrary, they recognize, and some of them expressly decide, the very opposite doctrine. The common-law rule is completely expressed in the simple statement that a devise, to be valid, must necessarily vest, if at all, within twenty-one years after lives in being, counting a child *en ventre sa mere* as in being. Any devise, which necessarily vests within that period is good; and it is quite immaterial that in the same sentence or clause, or with respect to the same subject matter, there be other devises which are too remote, or even that upon the identical devise there be engrafted remote ulterior limitations.

II. The devise to the grandchildren was a vested estate. It has been assumed for the purposes of argument thus far, that the estate devised did not vest at testator's death. But it did vest then; and that being so, the question of remoteness disappears. The trustees took a legal estate, in fee simple. Nothing less would suffice for the execution of the trusts imposed upon them. *Sears* v. *Russell*, 8 Gray, 86; *Rees* v. *Williams*, 2 M. & W. 749; *Garth* v. *Baldwin*, 2 Ves. Sen. 646; *Doe* v. *Edlin*, 4 Ad. & El. 582; *Doe* v. *Field*, 2 B. & Ad. 564; *Moore* v. *Burnet*, 11 Ohio, 334; *Neilson* v. *Lagow*, 12 How. 98. This disposes of the claim that the estate devised to the grandchildren is a vested legal remainder limited upon the legal estate given to the trustees. Nor is the estate of the grandchildren an equitable remainder. The estate of the grandchildren is not a remainder at all; it is not what remained after carving out a particular estate, legal or equitable; it is

not an estate limited to take effect at the expiration of a prior estate; but an equitable right, upon the happening of a particular event, to wit, the arrival at majority of the youngest grandchild, the children being dead, to have the lands partitioned, and conveyed to them in fee simple. *Holt* v. *Lamb*, 17 Ohio St. 374, 387; *Phipps* v. *Ackers*, 9 Cl. & Fin., 583. The devise is an executory trust, which creates a legal estate in fee simple in the trustees, and an equitable estate in fee, to commence *in futuro*, in the grandchildren living at the death of the testator, subject to open and let in after-born grandchildren, with a devise over of the share of any grandchild dying leaving issue, to such issue. *Phipps* v. *Ackers*, 9 Cl. & Fin. 583; *Jeefers* v. *Lampson*, 10 Ohio St. 101; *Linton* v. *Laycock*, 33 Ohio St. 128; *Fox* v. *Fox*, L. R. 19 Eq. 286; *Doe* v. *Considine*, 6 Wall. 458; Hawkins on Wills, 237–241.—To prevent a perpetuity the devise to grandchildren dying before distribution may be construed as an estate tail. *Allyn* v. *Mather*, 9 Conn. 114, 127; *Doe* v. *Cooper*, 1 East, 229, 234; *Humberston* v. *Humberston*, 1 P. Wms. 332. Where an instrument is open to two constructions, the one consistent and the other repugnant to law, or the one will give effect to the whole instrument and the other will destroy a part, the former must be adopted. *Pruden* v. *Pruden*, 14 Ohio St. 251. The whole doctrine of estates tail *cy pres* is founded on this principle. See Hawkins on Wills, 181, quoting *Moneypenny* v. *Dering*, 16 M. & W. 428; same, 182, citing *Vanderplank* v. *King*, 3 Hare, 1.

III. *As to the Ross County Record.* 1. Neither the complainants nor their trustees were parties to this record. The only parties to the proceeding, so far as the land in question is concerned, were the children of the testator, and his then living grandchildren. The complainants were not then in being. The trustees for grandchildren were not parties; and the bill alleged that the persons made defendants were the only persons specified in the will.—2. A proceeding to contest a will under the statute of Ohio* binds only the parties thereto.

* The statute in force at the time, and under which these proceedings were had, was the act relating to wills, passed February 18, 1831, 3 Chase Stat.

It is not an *ex parte* proceeding, or in the nature of a proceeding *in rem*, but a suit *in personam* in chancery, whose decree binds none but the parties. *Holt* v. *Lamb*, 17 Ohio St. 374. This settled construction of the statute by the courts of Ohio is binding upon this court, as much so as if part of the statute. *Polk* v. *Wendall*, 9 Cranch, 87, 98; *Thatcher* v. *Powell*, 6 Wheat. 119, 127; *Jackson* v. *Chew*, 12 Wheat. 153; *Nichols* v. *Levy*, 5 Wall. 433; *Williams* v. *Kirtland*, 13 Wall. 306; *Barrett* v. *Holmes*, 102 U. S. 651; *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Leffingwell* v. *Warren*, 2 Black, 599, 603; *McKeen* v. *Delancy*, 5 Cranch, 22; *Christy* v. *Pridgeon*, 4 Wall. 196. In order that there may be a proceeding *in rem*, the *res* must be either (1) a thing guilty, that is, some act must have been done in, with, or by it, in contravention of some law having the forfeiture of such misused thing as its sanction; or (2) it must be a thing hostile, in other words, owned or controlled by a public enemy; or (3) it must be a thing indebted, that is liable in law for the payment of a sum of money. It is manifest that a suit to set aside a will is not *in rem*. Strictly speaking, it is not a suit, but a proceeding to secure the registration of a posthumous conveyance.—3. The legal trust estate was not affected by the proceedings to set aside the will. The resignations did not divest the trustees of the legal estate; but even if they did, the estate passed to the heirs charged with the trust. *Adams* v. *Adams*, 21 Wall. 185, 192; Story Eq. Jur. § 976; Jeremy Eq. 163; Hargrave's note 146 to Co. Lit. 113 *a*; 1 Spence Eq. Jur. 501; Perry on Trusts, § 240.—It is equally clear that the equitable estate of the complainants was not affected by the suit to set aside the will. If it did not vest at the testator's death in the grandchildren then living,

1785. Sec. 20 (p. 1788), is as follows: "That if any person interested shall, within two years after probate had, appear and by bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the last will of the testator or testatrix or not; which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court the power of granting a new trial, as in other cases; but if no person appear in that time, the probate shall be forever binding; saving also to infants, married women, and persons absent from the State, or of insane mind, or in captivity, the like period after the removing of their respective disabilities."

·it was not represented. If it was then vested in the grandchildren who were parties to the suit, it was subject to be divested to let in after-born grandchildren. It is well settled that the rights of the unborn in such case are not affected by a decree against the living holders. *Downin* v. *Sprecher*, 35 Maryland, 474; *Graham* v. *Houghtalin*, 1 Vroom, 552; *Monarque* v. *Monarque*, 80 N. Y. 320; *Goodess* v. *Williams*, 2 Yo. & Col. Ch. 595. The cases cited by opposite counsel on this point are all cases of contingent remainders, or estates tail, or suits for partition, or by trustees to change investments. See *Watson* v. *Watson*, 3 Jones Eq. 400; *Lancaster* v. *Thompson*, 5 Madd. 4, 13; *Adair* v. *New River Co.*, 11 Ves. 428, 444; *York* v. *Pilkington*, 1 Atk. 282; *Attorney General* v. *Corporation of London*, 8 Beav. 270, 282; *Holland* v. *Baker*, 3 Hare, 68. "The great and essential difference between the nature of a contingent remainder, and that of an executory devise (and that, indeed, which renders it material to distinguish the one from the other in their creation) consists in this: that the first may be barred and destroyed, or prevented from taking effect, by several different means; whereas, it is a rule, that an executory devise cannot be prevented or destroyed, by any alteration whatsoever in the estate out of which, or after which it is limited." Fearne on Remainders, 418. If courts, where no person is in existence entitled to an estate of inheritance, have sometimes placed on record an existing tenant for life, that has never been done unless the tenant was one whose issue, if he were to have any, would become entitled to the inheritance. Calvert on Parties, 60. And the bill must contain a specific allegation that the parties are suing on behalf of themselves and others. The right of one defendant to represent many in a common interest is limited to cases where the rights in issue are in the nature of general rights, and to cases in which the object of the suit is merely to change the form of the property to which they attach—certainly not where its object is to divest or destroy them. Representation by an adverse interest is an absurdity which the law does not contemplate. Thus the unborn grandchildren, not being represented in law or in fact, in the suit to set aside the will, their estate remains intact. Even if the will

is in law set aside, that does not cut off the equity of the bill. For a court of equity will compel trustees who have caused the trust estate to be conveyed to themselves in fraud of the rights of the *cestuis que trust* to account as trustees. *Long* v. *Mulford*, 17 Ohio St. 509; *Rammelsberg* v. *Mitchell*, 29 Ohio St. 57; Hill on Trustees, 144; Perry on Trusts, § 181, citing *Middleton* v. *Middleton*, 1 Jac. & Walk. 96; *Reech* v. *Kennegal*, 1 Ves. Sen. 123; *Oldham* v. *Litchfield*, 2 Vernon, 506; *Mestaer* v. *Gillespie*, 11 Ves. 620, 638. See also *Meader* v. *Norton*, 11 Wall. 442, 457; *Cocks* v. *Izard*, 7 Wall. 559; *Slater* v. *Maxwell*, 6 Wall. 268, 276; *James* v. *Railroad Co.*, 6 Wall. 752; *Goodin* v. *Cin. & Whitewater Canal Co.*, 18 Ohio St. 169; *Michoud* v. *Girod*, 4 How. 503.

IV: *As to the defence of innocent purchasers.* This applies only to a defendant who has purchased the legal title in ignorance of the complainant's equitable title. *Vattier* v. *Hinde*, 7 Pet. 252; Langdell Eq. Pl. § 140. The defendants who set up that defence either have not acquired the legal title, or had notice of the equitable title. The probate and record of the will passed title to the devisees in the land devised from the death of the testator wherever situated in the State. *Hall* v. *Ashby*, 9 Ohio, 96; *Carpenter* v. *Denoon*, 29 Ohio St. 379, 395. There can be no defence of innocent purchase in the face of a recorded title. *Dick* v. *Balch*, 8 Pet. 30. See *Nichols* v. *Eaton*, 81 U. S. 716; *Day* v. *Micou*, 18 Wall. 156.

*Mr. Harrison* for appellees.—I. *As to the Statute of Probate * and the proceedings under it in Ross County.*—1. While the verdict and decree annulling the will remain in force, neither the actual parties to the proceeding in which the verdict and decree were rendered, nor the appellants, who were not born until many years after the contest, can treat them as nullities, nor collaterally impeach them. The object of the suit was, to determine the legal status of the writing produced. All interested persons then *in esse* were parties. The verdict and decree operated upon the entire instrument, the legal status of which was in-

---

* See *ante*, p. 357.

divisible. The right to make the will and the right to contest it were created and regulated by the same statute. The latter—right to contest—within the time and in the mode prescribed, could not be cut off by any provision in the will itself. The issue in the contest was not an adversary suit. There were strictly no parties. The statute conferred jurisdiction upon the court over the thing itself. The first proceeding under the statute, to prove the will, is *ex parte* and *in rem;* the second, to set aside the probate, is equally so; though in form original, in fact it is in the nature of an appeal. The entirety of the question decided in each court is apparent. Therefore the verdict establishes the will, as a whole, or annuls it as a whole. The court, in controlling the preparation and directing the progress of the contest, must look to the persons interested, whether they are in existence or not, because they are to be affected, consequentially, by the verdict. But neither the question submitted for decision, nor the jury who are to decide it have any direct reference to them. The verdict is not against persons; it is against the thing in contest. The statute prescribed who should be parties to the suit; and limited the time within which it should be brought. The appellants, being born after expiration of the time, could not be made parties; and as the instrument could not be set aside as to living interested persons and remain in force as to unborn executory devisees, it follows that the verdict and decree bind the appellants. See *Singleton* v. *Singleton,* 8 B. Monroe, 340; *Hunt* v. *Acre,* 28 Ala. 580; *Scott* v. *Calvit,* 3 How. (Miss.) 148; *Benoist* v. *Murrin,* 48 Missouri, 48; *Haynes* v. *Haynes,* 33 Ohio St. 598; *Brown* v. *Burdick,* 25 Ohio St. 260; *Meese* v. *Keefe,* 10 Ohio, 362; *Bradford* v. *Andrews,* 20 Ohio St. 208.—2. The case of *Holt* v. *Lamb,* 17 Ohio St. 374, relied upon by opposing counsel, is not in point. The testatrix there devised vested estates to persons in being when the will was made and took effect, and when the will was contested. Aside from this, the ruling is unsound, and in conflict with other decisions of the same court. *Meese* v. *Keefe,* 10 Ohio, 362; *Bradford* v. *Andrews,* 20 Ohio St. 208; *Walker* v. *Walker,* 14 Ohio St. 157, 176; *Brown* v. *Burdick,* 25 Ohio St. 260, 266; *Haynes* v. *Haynes,* 33 Ohio St.

598.—3. Decrees in chancery often bind interests in property devised to unborn persons. *Lorillard* v. *Coster*, 5 Paige, 172; *Palmer* v. *Flower*, L. R. 13 Eq. 250; *Bassuet* v. *Moxon*, L. R. 20 Eq. 182; *Wills* v. *Slade*, 6 Ves. 498; *Cross* v. *De Valle*, 1 Wall. 1. If such a verdict and decree are inoperative as to interests of persons unborn and unascertained when the decree is rendered, then the instrument cannot be set aside as to such interests at all, and the absolute right conferred by the statute to contest the will would be frustrated. The purposes of the legislature would be nullified. The right of alienation might be suspended indefinitely, by the terms of an instrument, adjudged to be a nullity after a trial by jury. The adoption of this theory would in many cases render the administration of estates impracticable.—4. The rule that we contend for is founded on public policy; it is essential to the repose of titles founded on wills; it is necessary for quieting litigation that verdicts and decrees in contested will cases should be binding upon contingent and executory interests of persons not *in esse* and ascertained when the contest takes place. See *Mosier* v. *Harmon*, 29 Ohio St. 220, 255–6; *Walker* v. *Walker*, 14 Ohio St. 157, 175, and the other cases above cited from the Kentucky, Alabama, Mississippi, Missouri, and Georgia reports.—5. It is the duty of the court, in cases in which the validity of a will is contested under the wills act of Ohio, to control the preparation, and direct and control the progress of the proceedings, and look to and protect the interests of unborn persons to whom contingent bequests or devises are made, although it is uncertain whether such persons will ever come into being, and, even if they should, whether such interests will ever vest. And see *Scott* v. *Calvit*, above cited.—6. The rule as to the persons upon whom judgments and decrees in actions *in personam* are binding, is not applicable in a proceeding, under this statute, to contest the validity of a will.—7. The fact that there were no executors in existence when the decree was rendered, does not entitle the appellants to treat it as a nullity; upon the acceptance of their resignations they were *functi officio*. The contestant was not obliged to have executors appointed. To have done so would have been a recogni-

tion of the will. The powers given to the executors were given to the office, not to the persons. An executor is to be considered as holding property devised to him in that character, unless it clearly appear from the face of the will that the testator intended it to be held by him as a special trustee. *State v. Nicols*, 10 Gill & Johns. 27; *Perkins* v. *Moore*, 16 Ala. 9; *Steele* v. *Worthington*, 2 Ohio, 182; *Gandolpho* v. *Walker*, 15 Ohio St. 251. If a special trust is cast upon an executor, as executor, the execution of such trust is a duty superadded to his ordinary official duties as executor, and until he qualifies himself and assumes to act in his separate capacity as special trustee, the bond to perform his duties as executor binds him and his sureties to the execution of such trust; for in such cases he acts in the capacity of executor, and does not become a special trustee until he actually qualifies as such. *Perkins* v. *Moore*, 16 Ala. 9; *Newcombe* v. *Williams*, 9 Met. 525; *Dorr* v. *Wainwright*, 13 Pick. 328; *Towne* v. *Ammidown*, 20 Pick. 535; *Felton* v. *Sawyer*, 41 N. H. 202.—8. These executors did not qualify, or assume to act as special trustees. Their trust was to all intents executorial. The will devised the legal title to the lands in contest to them for a limited time—*qua* executors, and not *nominatim*. Upon their qualification, it vested in them as such. Their resignations and the acceptance of them again divested them of it, and the legal title vested in the heirs, until the appointment and qualification of successors. Having ceased to be executors, they did not represent the estate, and were not necessary parties to the suit.—9. It is not requisite in order to sustain, as against the plaintiffs, the verdict annulling "the writing produced" as Duncan McArthur's will, to apply to the case the principle of virtual representation of persons not *in esse* by actual parties to a suit. If it were necessary, that principle could be applied. According to the reasons upon which the doctrine of virtual representation securely rests, the plaintiffs in the present suit were virtually represented in the proceeding to contest the alleged will, by the grandchildren of the decedent who were actual parties to the proceeding. The will devised the lands in controversy to all the grandchildren, whether born or unborn at the death of the testator, as a class,

and the title and possession were, by the will, to vest in every member of the class at one and the same time. Hence, the grandchildren who were in being and actual parties to the contest, stood, when the contest was had, and when it must take place if at all, in precisely the same relation to the alleged will and the estate devised, as the grandchildren who were afterwards born. It follows that the grandchildren who were actual parties must, under the circumstances and from considerations of necessity, be held, for the purposes of the contest, to have virtually represented after-born grandchildren. *Mead* v. *Mitchell*, 17 N. Y. 210; *Baylor's Lessee* v. *Dejarnette*, 13 Gratt. 152; *Faulkner* v. *Davis*, 18 Gratt. 651; *Sohier* v. *Williams*, 1 Curtis, 479; *Gifford* v. *Hort*, 1 Sch. & Lef. 386; *Gaskell* v. *Gaskell*, 6 Sim. 643; *Powell* v. *Wright*, 7 Beav. 444; *Campbell* v. *Watson*, 8 Ohio, 498.—10. When the statute says that "the verdict shall be final between the parties" it means all parties in interest, whether actual present parties or unborn persons represented by acts of parties having identity of interest with them.—11. The order of the court appointing an administrator upon the estate of the decedent, as an intestate estate, and the order settling the final account of the administrator, are conclusive and have universal effect. They cannot be treated as nullities, nor collaterally attacked, by any person. *Jennison* v. *Hapgood*, 7 Pick. 1; *Field* v. *Hitchcock*, 14 Pick. 405, 407; *Clark* v. *Pishon*, 31 Maine, 503; *Record* v. *Howard*, 58 Maine, 225; *Sever* v. *Russel*, 4 Cush. 513.—12. If the complainants are entitled to any relief, their only remedy is by a proper bill in the Court of Common Pleas of Ross County, in the nature of a bill of review, and not by a petition for partition in this Court, treating the entire proceeding by which the pretended will was set aside and annulled, as absolute nullities. *Voorhees* v. *Bank of United States*, 10 Pet. 449; *Grignon Lessee* v. *Astor*, 2 How. 319; *Comstock* v. *Crawford*, 3 Wall. 396; *Cooper* v. *Reynolds*, 10 Wall. 308, 315; *McNitt* v. *Turner*, 16 Wall. 352; *Singleton* v. *Singleton*, 8 B. Monroe, 340.

II. *The supposed devises of the land in controversy would have been held void, even if the pretended will had not been set aside.* 1. The gift of the estate in fee contravenes the statute

of Ohio against perpetuities.* Under the provision of the will it is possible that the estate given might not vest during the lifetime of a person in being when the will was made, nor at the death of such person, nor during the lifetime of the immediate issue or descendant of such person. It is well settled that this possibility makes the entire gift void. From the earliest times the English courts set themselves against perpetuities. First they would allow only limitations to take effect at the end of one life from the testator's death. Then this was enlarged to include two or more lives in being; that being regarded as only the one life of the longest lives. The next step taken by the courts was much debated; but it was finally settled that an executory devise might be made to vest at the end of lives in being and twenty-one years after, to allow for the infancy of the next taker, who, by reason of infancy, could not alienate the estate. *Taylor* v. *Biddal,* 2 Madd. 289. The statute of 10 and 11 William III., c. 16, having provided that children *en ventre sa mere,* born after their father's death, should, for the purposes of the limitations of estates, be deemed to have been born in his lifetime, a further extension of nine or ten months was allowed for the period of gestation. *Goodman* v. *Goodright,* 2 Burr. 873. The next step was to allow a period of nine months for gestation at the beginning of the term, as the life in being during which the term would run might be that of a child *en ventre sa mere.* *Long* v. *Blackall,* 7 T. R. 100.—2. This common-law rule as to perpetuities the legislature regarded as incompatible with republican institutions: this was the mischief which it attempted to remedy by the statute. This and kindred legislation in other States aimed to prevent property from being tied up, and the power of its disposition suspended.—3. As to the interpretation of this statute. It was a restraining and not an enabling act. In *Turley* v. *Turley,* 11 Ohio St. 173, it was held that a devise to children of predeceased children was not in conflict with the statute, and that "immediate descendants" includes all to whom, under the statute of descents, an estate would have

---

* See *ante,* page 354, note.

descended immediately from the particular person whose descendants they are required by the will to be. In *Harkness* v. *Corning*, 24 Ohio St. 416, it was decided that the statute does not change the nature of the estate in the first donee in tail from an inheritable estate to an estate for life only. Among other results, which, as we contend flowed from these several decisions, were the following: (*a*.) Immediately upon the termination of a particular estate by the death of the person in being at the time of making the will, to whom such particular estate is given, the entire inheritance must immediately vest in the person or persons to whom the estate in remainder, or any future estate by way of executory devise, conditional limitation, etc., is given. (*b*.) Grandchildren or great-grandchildren, or other immediate issue or descendants of persons in being at the time of making the will, may take an estate in remainder, or any future estate, by way of executory devise, &c., provided they are *in esse* when the particular estate given to a person living when the will is made terminates by his death. (*c*.) But grandchildren or great-grandchildren, or other issue or descendants of persons in being at the time of making the will, who are born subsequently to the death of the person in being when the will was made, and to whom a particular estate is given, cannot take. (*d*.) By the common law, estates in remainder, or any future estates by way of executory devise, &c., may be so limited that the vesting of the same can be postponed until after a life or lives in being at the death of the testator and twenty-one years; but under the statute the vesting of such estates cannot be postponed beyond the death of a person or persons in being when the will was made. They cannot, therefore, be so limited as that they will not vest until after the death of a person or persons in being when the will was made, and when and as soon as a person or persons not then in being shall arrive at twenty-one years of age. (*e*.) Under the statute, where estates for life, either legal or equitable, are given to persons in being at the making of the will, and the fee is so given that the persons respectively to whom it is given take the same by descent, and not by purchase, through the tenants for life respectively, the

vesting of the estates in fee cannot be postponed until the death of all the tenants for life; but in such case the estates must vest in the immediate issue or descendants from time to time, and as each tenant for life dies; the issue or descendants of each tenant for life taking in fee such part of, or interest in, the premises as was held by each tenant for life respectively. This statute cannot be evaded by means of a trust, condition, or other device. The limits prescribed to the creation of future estates and interests are the same at law and in equity. *Ould* v. *Washington Hospital*, 95 U. S. 303; *Norfolk* v. *Howard*, 1 Vernon, 163; *Brattle Square Church* v. *Grant*, 3 Gray, 141, 155, and cases there cited. It is equally well settled that the contingency upon the happening of which the estate is to vest, must happen within the time fixed by law. If by possibility, it may happen later, the limitation and the devises creating it are void. *Ould* v. *Washington Hospital*, and *Brattle Square Church* v. *Grant*, both cited above; *Nightingale* v. *Burrell*, 15 Pick. 104, 111; *Sears* v. *Russell*, 8 Gray, 96, 98; *Everitt* v. *Everitt*, 29 Barb. 112; Lewis on Perpetuities, 170; *Amory* v. *Laird*, 5 Selden (9 N. Y.) 403, 415; *Jackson* v. *Billinger*, 18 Johns. 367, 381; *Welsh* v. *Foster*, 12 Mass. 93; *Hone* v. *Van Schaick*, 7 Paige, 221. When a gift includes in one description persons capable and persons incapable, by reason of remoteness, the entire gift is void. *Ker* v. *Dungannon*, 1 Dru. & War. 509. An executory devise transgressing the allowed limits is void as a whole, and not simply for the excess. *Leake* v. *Robinson*, 2 Meriv. 363, 389. It follows, from the settled principles above stated, that if the alleged will of Duncan McArthur by reason of the trusts, conditions, or limitations therein, concerning the real estate in contest, prevented, or might by any possibility have prevented the vesting of the estate, or suspended the free transmission thereof to a period beyond the lives of persons in being at the time of the making of the will, the devises containing such trusts, conditions, or limitations are void ; and immediately upon his decease the estate vested absolutely in his heirs at law. We submit that, upon an examination of the several clauses of the will in regard to the lands in contest, it appears beyond doubt that they contain trusts, conditions, and limitations of

such a nature as to prevent the vesting of the estate, or sus-
pend the free transmission thereof to a period beyond the lives
of persons in being at the time of the making of the will, and
provide for the vesting of the estate in persons other than the
"immediate issue or descendants of persons in being at the
time of the making of the will." An analytical examination of
the clauses of the will shows: 1st. That the lands were de-
vised to the executors in trust. 2d. That the legal estate
was in the executors, with right of possession for the lives of
the children and until the last and youngest grandchild at-
tained the age of twenty-one years. 3d. That the rents and
profits during this time were to go to the children, the minor
child or children of a child dying, and such grandchildren as
might attain the age of twenty-one, to the exclusion of grand-
children under twenty-one. 4th, and that no vested interest
in the remainder was given: that the devise was contingent,
and became vested, when the youngest or last grandchild
reached twenty-one, in such grandchildren or great-grandchil-
dren as were then in life. The testator intended himself to con-
trol the descent of the estate until the death of all his children,
and the arrival of his youngest grandchild to the age of twenty-
one years. He intended to keep the vast estate in his family
for generations. The will must be construed so as to carry out
this cardinal idea. There is no distinct gift of the lands to
grandchildren unconnected with the actual occurrence, and the
time of the occurrence of the events named in the devise of the
lands. The disposition actually made by the testator is per-
fectly manifest, and is plainly inconsistent with the statute of
Ohio " to restrict the entailment of real estate," and is void.
See *Colton* v. *Fox*, 67 N. Y. 348; *Olney* v. *Hull*, 21 Pick. 311;
*Thompson* v. *Luddington*, 104 Mass. 193; *Stephens* v. *Evans*, 30.
Indiana, 39; *McBride* v. *Smyth*, 54 Penn. St. 245; *Baylor* v.
*Dejarnette*, 13 Gratt. 152. The provision of the will requiring
the executor to divide the estate among grandchildren and great-
grandchildren living when certain future events occur is in-
compatible with the idea of a present vesting. *Chittenden* v.
*Fairchild*, 41 N. Y. 289. A remainder is contingent when the
persons who are to take it are uncertain. *Hawley* v. *James*, 16

Wend. 60, 140. These estates are future estates. There are no words of present gift. See also *Eyre* v. *Marsden*, 2 Keen, 564; *Blease* v. *Burgh*, 2 Beav. 221, 226. If a limitation be to a class, collectively, and a part of these be beyond the limit of remoteness, it is void as to all. *Porter* v. *Fox*, 6 Sim. 485. In this case all of the class are beyond the limits of remoteness tolerated by the statute of Ohio. The devise of the lands to the executors in trust to receive the rents and profits does not save the devise to grandchildren and great-grandchildren living at the expiration of the trust, from the operation of the statute against perpetuities. The trust suspends the power of alienation; and unless its continuance is limited according to law, it is void in its creation. *Boynton* v. *Hoyt*, 1 Denio, 53. Where land is devised upon a trust void as tending to create a perpetuity, the heir is entitled to recover. *Hillyard* v. *Miller*, 10 Penn. St. 326. The contention that the devise creates an estate tail is untenable. The words "children" and "grandchildren" are used in the will as descriptive of persons, or classes of persons, to whom the rents and profits are to be distributed; and "grandchildren" and "child" or "children" of "grandchildren" are further used as descriptive of the persons in whom the fee is to vest. In their proper sense the words "child" and "grandchild" are words of purchase. They are not treated as words of limitation unless necessary to carry out a manifest intent of a testator. The will did not create an estate tail, but an absolute estate in fee simple to vest upon the death of all the testator's children and the arrival of the last or youngest grandchild at the age of twenty-one. Even without the statutes of perpetuities these devises would have been held void in Ohio, where the rules of the common law in this respect have never been recognized. *Bloom* v. *Richards*, 2 Ohio St. 387; *Sergeant* v. *Steinberger*, 2 Ohio, 305; *King* v. *Beck*, 15 Ohio, 559. Counsel for appellants contend that the devise is good under the English rule against perpetuities; but that rule would not be held to prevail in Ohio if the statute had not been enacted. See *Harkness* v. *Corning*, 24 Ohio St. 416. Their proposition that the devise is good under the act of 1811, because the appellants are the immediate issue of persons in being when the

will took effect, is also unsound. The appellants may be the immediate issue; but others of the same class are not, and the devise is of one subject matter to an entire class. When a gift includes in one description persons capable and persons incapable by reason of remoteness, the entire gift is void. *Ker* v. *Dungannon*, 1 Dru. & War. 509; *Candy* v. *Campbell*, 2 Cl. & Fin. 421; *Greenwood* v. *Roberts*, 15 Beav. 92; *Smith* v. *Smith*, L. R. 5 Ch. 342; *Leake* v. *Robinson*, 2 Meriv. 363. And when there is a gift to a class, some of the objects of which are too remote, and some not, effect cannot be given to the latter, separated from the former, but the whole gift is void. *Seaman* v. *Wood*, 22 Beav. 591. The cases of *Lowry* v. *Muldrow*, 8 Rich. Eq. 241, and *Savage* v. *Burnham*, 17 N. Y. 561, relied on by the other side, are not in point to their claim that under the statute the devise is not rendered void by the provision made for the great-grandchildren, because that devise was merely substitutional. We reply to this claim, (1) that the purpose of the will was perpetuity—that a contingency was possible in which the whole estate might have been divided among great-grandchildren; and (2) that the time for vesting of the estate is postponed beyond the time allowed by the act of 1811. That was a restraining, not an enabling act, as explained in the opening of the argument. The statute sets substantially the bounds to the postponement of the vesting, which the common law first set to executory devises.—The grandchildren do not take estates tail under the will. The *cy pres* doctrine has no application to this devise, because, (1) the doctrine is inapplicable when the limitation to the unborn children gives them a few. *Hale* v. *Pew*, 25 Beav. 335. And (2) the doctrine of *cy pres* is inadmissible where the paramount intention of the testator is to create a perpetuity, and where the doctrine, if applied, would effectuate his purpose in contravention of the declared object of positive law.—The devises were contingent, not only as to the time when the estate should be decided, but as to the persons to take. When the existence of the devisee of a contingent remainder at a particular time makes part of the contingency, or enters into it, the remainder cannot descend. Appellants disregard the distinction between a contingency

depending on the person to take, and a contingent interest. In the latter the representatives may take when the event occurs, though the first taker pointed out may not be in existence. In the former nothing passes until the contingency happens. Where remainders are created in which only persons who survive a particular event are to take, it is obvious that no person who does not survive the event can take, or have any transmissible estate. There is a manifest difference between such remainders and those in which certain defined persons, ascertained without reference to a particular event, are to take on the happening of such event. Here the devise was not to certain defined persons, irrespective of the event; on the contrary, the remainder is limited to persons who were not in being when the will was made, and who cannot be ascertained until the event happens. The futurity here is annexed to the substance of the devise, and not to the time of partition only. 1 Jarman on Wills, 760, 645. The will bears marks of having been prepared by a thoughtful lawyer. The use of the words " when and as soon as " show a purpose of fixing the date when the interest should vest. *Colt* v. *Hubbard*, 33 Conn. 281, 285. See also *Festing* v. *Allen*, 12 M. & W. 279; *Duffield* v. *Duffield*, 1 Dow & Cl. 268, 314; *Augustus* v. *Seabolt*, 3 Met. (Ky.) 155; *Thorndike* v. *Loring*, 15 Gray, 391.

*Mr. Herron*, in addition to the points presented by *Mr. Harrison* urged as special defences on the part of his client,. (1) That he was a bona fide purchaser direct from the heirs at law of Duncan McArthur, after the resignation of the executors, and when the legal title was, as he claimed, vested in the heirs; and that having acquired that title for a valuable consideration paid to the heirs, he had improved and occupied the lands as his home for thirty years before suit brought. As to the effect of these facts he cited *Jerrard* v. *Saunders*, 2 Ves. Jr. 454; *Fitzsimmons* v. *Ogden*, 7 Cranch, 2; *Anketel* v. *Converse*, 17 Ohio St. 11. (2) The staleness of the complainants' claim. They had two claims. The first to the enjoyment of the property left them under the will. That could not occur until the youngest grandchild became of age. The second was

to have the question of the probate of the will settled. That might have been done at an earlier date, as many of the grandchildren were entitled to set up that claim prior to 1858, and their interests were inseparable from those of complainant. See *Bradford* v. *Andrews*, 20 Ohio St. 208, 219.

*Mr. McClintick* argued from a careful historical review of the legislation of Ohio relating to the proof of wills,* that the proceedings in the Court of Common Pleas for Ross County, setting aside the probate of the will were a bar to the present claim of the complainants. On the question of perpetuities he rested on the arguments of *Mr. Harrison* and *Mr. Herron.*

*Mr. Page* contended, 1. That the executors were not necessary parties to the suit to vacate the will. The grandchildren of the testator *in esse* at the date of the suit, and parties to it, had the remainder in fee at that time, and were the only parties in existence who had it. The present complainants necessarily could not be made parties; but they occupy the same position as if they had been. The remainder in fee which opened to let them in, was represented in that suit by the only parties who could represent it. The whole legal

---

* The following Statutes of the Territory and of the State were cited by *Mr. McClintick :*

Territorial act of August 30, 1788, 1 Chase Stat. 96;
Territorial act of June 19, 1795, 1 Chase Stat. 182;
Constitution of 1802, Schedule § 4, 1 Chase Stat. 84;
Same, Art. III. § 5, 1 Chase Stat. 79 ;
Act of January 5, 1805, 1 Chase Stat. 492 ;
Act of February 18, 1808, 1 Chase Stat. 571 ;
Act of February 20, 1808, 1 Chase Stat. 577 ;
Act of February 10, 1810, 1 Chase Stat. 680 ;
Act of February 19, 1810, 1 Chase Stat. 685 ;
Act of February 8, 1812, 2 Chase Stat. 769 ;
Act of January 25, 1816, 2 Chase Stat. 929 ;
Act of February 26, 1824, 2 Chase Stat. 1305 ;
Act of February 18, 1831, 3 Chase Stat. 1785 ;
Act of March 12, 1831, 3 Chase Stat. 1775 ;
Act of March 3, 1834, 32 Ohio Laws, 41 ;
Act of March 16, 1839, 37 Ohio Laws, 57 ;
Act of March 23, 1840, 38 Ohio Laws, 120.

estate, both in life and in remainder, was vested in the children and grandchildren of the testator in trust, and it is to be presumed that they did their duty in defending the will. The estate now claimed was represented in the suit by parties who had a right to represent it. The claimants, coming into the same estate, must take it as they find it. The general rule requiring all parties to be represented, is confined to parties to the interest involved in the issue. The rule may be dispensed with in case of difficulty or extreme inconvenience. *Hallett* v. *Hallett*, 2 Paige, 15. It is within the discretion of the court to permit a suit to proceed without the appearance of a trustee, when all the *cestuis que trust* are parties ; as when a trustee for some reason cannot be compelled to appear. *Walley* v. *Walley*, 1 Vernon, 484; *Moore* v. *Vinten*, 12 Sim. 161. See also *Brookes* v. *Burt*, 1 Beav. 106 ; *Seddon* v. *Cormel*, 10 Sim. 85. A trustee named in a will who has refused the trust is not a necessary party. *Creed* v. *Creed*, 2 Hogan, 215. And one who was released and never acted ought not to be a party. *Richardson* v. *Hulbert*, 1 Anstr. 65. And when the bill states (as did the bill in Ross County) that there are no executors and none can be had, the defect of their non-appearance, even if it were one, is excused. 2 Maddock Ch. Pract. 178. It is not disputed that had there been acting executors, they should have been made parties ; but even if they had been omitted, could any one else have treated the proceedings as void, in a collateral suit ? If the objection of defect of parties had been raised at the time, the court might have required the bill to be amended. To raise the objection in another suit after the lapse of thirty-five years raises a different question. For, when neither party raises such an objection, it is competent for the court to go on and settle the rights of the parties before it, without prejudice to those who are not parties. *Lorillard* v. *Coster*, 5 Paige, 172. And in such case, though the omitted parties or their privies in law or estate may object to the judgment, that objection cannot be taken by a third party. Much less can a party to the suit object that his trustee was not a party.—2. That the devise to the executors was *virtute officii*. The trust was annexed to the office, and not to the person of the executors.

*Jackson* v. *Ferris*, 15 Johns. 346; *Warden* v. *Richards*, 11 Gray, 277; *Miller* v. *Meetch*, 8 Penn. St. 418. An executor, who renounces his office, the renunciation being followed by twenty years of total non-interference with the estate, is deemed to have renounced the trust, which is personal and discretionary. *Beekman* v. *Bonsor*, 23 N. Y. 299. These executors never accepted a trust under this will, distinct from the executorship. When they resigned and their resignations were accepted, their title was extinguished.—3. That the grandchildren not *in esse* were parties by representation to the suit to set aside the will. *Lorillard* v. *Coster*, 5 Paige, 172; *Campbell* v. *Watson*, 8 Ohio, 498; Mitford Pl. 173; 1 Daniel Ch. Pract. 274; *Dursley* v. *Fitzhardinge*, 6 Vesey, 251; *Eagle Fire Insurance Co.* v. *Cammett*, 2 Edw. Ch. 127. See *Faulkner* v. *Davis*, 18 Gratt. 651, 684; *Baylor* v. *Dejarnette*, 13 Gratt. 152; *Knott* v. *Stearns*, 91 U. S. 638; *Sohier* v. *Williams*, 1 Curtis, 479; *Nodine* v. *Greenfield*, 7 Paige, 544; Adams Eq. 315; *Freeman* v. *Freeman*, 9 Heisk. 301; *Mead* v. *Mitchell*, 17 N. Y. 210, 214; *Clemens* v. *Clemens*, 37 Id. 59; *Brevoort* v. *Grace*, 53 Id. 245; *Chism* v. *Keith*, 1 Hun, 589; Calvert on Parties, ch. IV.—4. That executory interests are barred. The interests of the grandchildren were vested. In Ohio future contingent interests, whether a remainder or executory devise, are transmissible by deed or will. *Thompson* v. *Hoop*, 6 Ohio St. 480. Contingent limitations and executory devises to persons not in being may be bound by a decree against a person claiming a vested estate of inheritance. Story Eq. Pl. § 147; Mitford Pl. 174; Calvert on Parties, 51. The English rule is to bring before the court the person entitled to the first estate of inheritance with those claiming prior interests, omitting those who might claim the remainder or reversion after such vested estate of inheritance. It would, therefore, follow as a matter of course from this rule, that contingent limitations and executory devises to persons not in being would in like manner be bound by a decree against the virtual representatives of these remote and contingent interests, the person having the first vested estate of inheritance. *Mead* v. *Mitchell*, 17 N. Y. 214; *Clemens* v. *Clemens*, 37 N. Y. 59;

*Brevoort* v. *Grace*, 53 N. Y. 245. The English case of *Goodess* v. *Williams*, 2 Yo. & Col. Ch. 596, is opposed to previous English cases, and is in conflict with an unbroken line of American cases.—5. That the grandchildren not *in esse* were properly represented.—6. That the plaintiff was not required to have representatives appointed.—7. That if the court should have appointed executors, it is an error not affecting the jurisdiction.—8. That the defence by guardian *ad litem* was sufficient.—9. The counsel discussed the effect of the verdict and judgment under the Ohio act as to wills.—10. That the proceedings in Ross county cannot be impeached collaterally, because of the omission to appoint executors.

Mr. Justice Gray delivered the opinion of the court.

This case presents three principal questions :

First. Whether the equitable estate in fec. which Duncan McArthur by his will undertook to devise to his grandchildren, children of his five surviving children, was vested or contingent ?

Second. Whether the devise of that estate, so far as it is to the present plaintiffs, was void for remoteness ?

Third. Whether the decree in 1839, setting aside his will and annulling the probate, is a bar to this suit ?

I. The principal provisions of the will of Duncan McArthur, material to the decision of this case, are as follows :

By the fifteenth clause, he directs that his lands in the counties of Ross and Pickaway shall be leased or rented by his executors " until the youngest or last grandchild which I now have, or may hereafter have," the child of either of his five surviving children, Allen C., James McD., Effie, Eliza Ann or Mary, " who may live to be twenty-one years of age, shall arrive at that age." By the sixteenth clause, he directs that, until that time, the income of these lands, and the dividends of all stocks held by him or purchased by his executors, shall be by them annually divided equally among the five children aforesaid, or the issue of any child dying, and among the grandchildren also as they successively come of age.

The seventeenth clause provides as follows : " It is my further will and direction that after the decease of all my children now

living, and when and as soon as the youngest or last grand-child, in the next preceding clause but one of this will desig-nated and described, shall arrive at the age of twenty-one years, all my lands" in question "shall be inherited and equally divided between my grandchildren *per capita*, the law-ful issue of my said sons and daughters, Allen C., James McD., Effie, Eliza Ann and Mary, for them and their heirs forever, to have and to hold, or to sell and dispose of the same at their will and pleasure; and in like manner all the stocks belonging to my said estate, whether invested before or after my death, shall at the same time be equally divided among my said grand-children, share and share alike, *per capita;* but it is to be understood to be my will and direction that if any grandchild aforesaid shall have died before said final division is made, leaving a child or children lawfully begotten, such child or children shall take and receive *per stirpes* (to be equally di-vided between them) the share of my said estate, both real and personal, which the parent of such deceased child or chil-dren would have been entitled to have and receive if living at the time of such final distribution." The word "deceased," near the end of this passage, was evidently intended to be prefixed to the word "parent," instead of to the words "child or chil-dren," so as to read "deceased parent of such child or children."

By the eighteenth clause, he directs that "in such final dis-tribution of my lands" the executors for the time being shall make deeds of partition "to and in the names of those who may be thus entitled thereto;" and "to enable my executors the more effectually to execute the powers and duties by this will devolved upon them, and to protect my said children and grandchildren against fraud and imposition," he devises the lands to his executors and their successors, "and to their heirs, in trust for the uses and purposes and objects expressed in this my will, and the performance of which is herein above directed and prescribed, to have and to hold the title thereof till such final division, or partition thereof, and no longer." By the twenty-fourth clause, he appoints three executors, and directs and requests that if either of them shall die, resign, or refuse to act, the court having probate jurisdiction for the county of

Ross shall appoint a new one instead, to act as an executor with the others, so that there shall always be three executors.

The devise in the eighteenth clause of the title in the lands to the executors and their successors, and their heirs, in trust for the uses and purposes expressed in the will, to have and to hold until the final division or partition, clearly gave them an estate in fee, to last until that time. *Doe* v. *Edlin*, 4 Ad. & El. 582; *Maden* v. *Taylor*, 45 Law Journal (N. S.) Ch. 569 And there can be no doubt that, as contended by the learned counsel for the defendants, the powers conferred and the trusts imposed upon the executors were annexed to their office of executors, and did not make them trustees in another and different capacity. *Colt* v. *Colt*, 111 U. S. 566, 581; *Treadwell* v. *Cordis*, 5 Gray, 341, 358; *Gandolfo* v. *Walker*, 15 Ohio St. 251.

The equitable estate created by the gift in the sixteenth clause of the income to the children and grandchildren, being an estate which must endure for the lives of the children, and might endure throughout the lives of the grandchildren, though subject to be sooner determined in the contingency of the coming of age of the youngest grandchild, was technically an estate for life. 2 Bl. Com. 121.

The nature of the equitable estate in remainder created by the seventeenth clause demands more consideration.

The counsel for some of the defendants contended that it was contingent upon the arrival of the youngest grandchild at twenty-one years of age. In that view, the whole estate in remainder, being dependent upon the termination of the particular estate for life, and vesting at that time and not before, would be in legal effect an equitable contingent remainder to the grandchildren then living, and the issue then living of grandchildren theretofore deceased, as one class.

In behalf of other defendants it was contended that the remainder in fee expectant upon the estate for life vested immediately in the grandchildren living at the death of the testator, opened to let in afterborn grandchildren, and vested in them successively at birth, and would be divested as to the shares of those grandchildren only who should die, leaving children, before the determination of the life estate, by force of the direc-

tion that such children should take those shares. In this view, all the grandchildren took a vested remainder in fee ; and the gift over to the children of any deceased grandchild, inasmuch as it did not depend upon any precedent particular estate, but was by way of substitution for the devise in fee to that grandchild, was an executory devise.

For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event.

In the will before us, the testator directs the income to be divided annually, in specified and changing proportions, among his five children living at his death and their children, until the youngest grandchild comes of age. He gives no part of the income to children of grandchildren. He gives the fee, when the youngest grandchild comes of age, to the grandchildren and the children of deceased grandchildren. His general intent clearly is to give the income of the estate to the children and grandchildren so long as any grandchild is under age, and the principal to the issue of the five children, whether such issue are his grandchildren or his great-grandchildren.

If all the children and grandchildren should die before any grandchild should come of age, the distribution of the income would necessarily cease. In that event, if any of the grandchildren dying under age should leave children, the effect of holding the remainder to be contingent upon the coming of age of the young youngest grandchild would, as that contingency had never happened, cut off the great-grandchildren from any share in the estate, in direct contravention of the general intent of the testator. The more reasonable inference is, that upon the determination of the life estate by the death of all children and grandchildren, for whose benefit it was created, the great-

grandchildren would be immediately entitled to the remainder. *Castle* v. *Eate*, 7 Beav. 296 ; *Mansfield* v. *Dugard*, Gilb. Eq. 36 ; *S. C.* 1 Eq. Cas. Ab. 195, pl. 4. Upon that construction, the contingency contemplated must necessarily happen at some time, either by the arrival of the youngest grandchild at twenty-one years of age, or by the death of all the grandchildren under age ; and the case would come within the settled rule that " where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained ; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession." *Doe* v. *Considine,* 6 Wall. 458, 476 ; *Moore* v. *Lyons*, 25 Wend. 119, 144 ; *Blanchard* v. *Blanchard,* 1 Allen, 223, 227.

The terms in which the testator has expressed his intention likewise point to a vesting of the remainder in all his grandchildren.

The only gift of real estate in remainder to grandchildren is contained in the opening words of the eighteenth clause, by which the testator directs that " after the decease of all my children now living, and when and as soon as the youngest grandchild shall arrive at the age of twenty-one years," the lands " shall be inherited and equally divided between my grandchildren *per capita*, the lawful issue of my said sons and daughters," in fee.

This gift is not to such grandchildren only as shall be living at the expiration of the particular estate ; but it is to " my grandchildren *per capita*, the lawful issue of my said sons and daughters," words of description appropriate to designate all such grandchildren.

At the expiration of the particular estate, the lands are to be " inherited and equally divided " among the grandchildren, and " in like manner " the stocks are to be " equally divided " among them. The real estate and the personal property are clearly to go to the same persons and at the same time.

The word "inherited" (which is applied to the real estate only) implies taking immediately from the testator upon his death, as heirs take immediately from their ancestor upon his death. Devises or bequests in remainder, by the use of similar words, though preceded, as in this case, by the word "then," have been often held to be vested from the death of the testator. *Bullock* v. *Downes*, 9 H. L. Cas. 1; *Mortimore* v. *Mortimore*, 4 App. Cas. 448; *Parker* v. *Converse*, 5 Gray, 336; *Dove* v. *Torr*, 128 Mass. 38. The case of *Thorndike* v. *Loring*, 15 Gray, 391, cited for the defendants, is clearly distinguished by the fact that there the bequest of the principal at the expiration of fifty years was confined to "those who would then be my lawful heirs and entitled to my estate if I had then died intestate."

The words "and equally divided *per capita*," while they qualify the effect of the word "inherited" so far as to prevent a taking by the grandchildren *per stirpes* as under the statute of descents, also plainly indicate a vested remainder. Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. For instance, under a devise of an estate, legal or equitable, to the testator's children for life, and to be divided upon or after their death among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in afterborn grandchildren; although the number of grandchildren who will take, and consequently the proportional share of each, cannot of course be ascertained until the determination of the particular estate by the death of their parents. *Doe* v. *Considine*, 6 Wall. 458; *Cropley* v. *Cooper*, 19 Wall. 167; *Dingley* v. *Dingley*, 5 Mass. 535; *Doe* v. *Provoost*, 4 Johns. 61; *Linton* v. *Laycock*, 33 Ohio St. 128; *Doe* v. *Perryn*, 3 T. R. 484; *Randoll* v. *Doe*, 5 Dow, 202. So a direction that personal property shall be divided at the expiration of an estate for life creates a vested interest. *Shattuck* v. *Stedman*, 2 Pick. 468; *Hallifax* v. *Wilson*, 16 Ves. 168; *In*

*re Bennett's Trust,* 3 K. & J. 280; *Strother* v. *Dutton,* 1 DeG. & Jon. 675.

The remainder, being vested according to the legal meaning of the words of gift, is not to be held contingent by virtue of subsequent provisions of the will, unless those provisions necessarily require it. The subsequent provisions of this will had other objects.

The direction that if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpes* the share of the estate, both real and personal, which their parent would have been entitled to have and receive if then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and its only effect upon that gift is to divest the share of any grandchild deceased leaving issue, and to vest that share in such issue. *Smithers* v. *Willock,* 9 Ves. 233; *Goodier* v. *Johnson,* 18 Ch. D. 441; *Darling* v. *Blanchard,* 109 Mass. 176; 1 Jarman on Wills (4th ed.) 870.

The addition, in the eighteenth clause of the will, of the provisions that any assignment, mortgage or pledge by any grandchild of his share shall be void, and that the executors, in the final partition and distribution, shall convey and pay to the persons entitled under the will, rather tends to show that the testator considered the estate to be vested, and to be in danger of being alienated but for these provisions; and, whatever their legal effect may be, they cannot be construed as making a remainder contingent, which the terms of the previous gift, and the general intent of the testator, as appearing from the whole will, require to be vested. *Hall* v. *Tufts,* 18 Pick. 455.

For these reasons, we are of opinion that the will purports to devise to all the grandchildren *per capita,* children of the five surviving children of the testator, a vested remainder in fee; and to the children *per stirpes* of any grandchildren deceased before the arrival of the youngest grandchild at twenty-one years of age, a similar estate in fee by way executory devise.

II. To come within the rule of the common law against per-

petuities, the estate, legal or equitable, granted or devised, must be one which, according to the terms of the grant or devise, is to vest upon the happening of a contingency which may by possibility not take place within a life or lives in being (treating a child in its mother's womb as in being) and twenty-one years afterwards.

In the case at bar, as the youngest grandchild must be in being in the lifetime of his parent, and that parent was born in the testator's lifetime, the devise to the grandchildren, and even the devise over, upon the arrival of the youngest grandchild at twenty-one years of age, to the children of any grandchild deceased before that time, must necessarily take effect, as to every devisee, within a life or lives in being and twenty-one years afterwards, and therefore do not violate the rule of the common law; and it is unnecessary to consider whether that rule is in force in Ohio.

The statute of Ohio of December 17, 1811, in force at the making of this will and at the testator's death, imposed different restrictions upon grants and devises of real estate, by enacting that "no estate in fee simple, fee tail, or any lesser estate, in lands or tenements lying within this State, shall be given or granted by deed or will to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being, at the time of making such deed or will." 2 Chase's Statutes, 762.

It was assumed at the argument, and can hardly be doubted, that in this statute the words "the time of making such deed or will," which, as applied to a deed, designate the time both of its execution and of its taking effect, denote, as applied to a will, the time when it takes effect by the death of the testator, and not the date of its formal execution. By the law of England, the question of remoteness depends upon the state of facts at the time of the testator's death, though differing from that existing at the date of the will. *Williams* v. *Teale*, 6 Hare, 239, 251; *Cattlin* v. *Brown*, 11 Hare, 372, 382; Lewis on Perpetuities, Supplt. 53–60, 64; 1 Jarman on Wills, 254.

Under the common-law rule against perpetuities, a devise to a class, some members of which may possibly not take within the

prescribed period, is wholly void. *Leake* v. *Robinson*, 2 Meriv. 363; *Pearks* v. *Moseley*, 5 App. Cas. 714. But that is because, as observed by Sir William Grant, "it is the period of vesting, and not the description of the legatees, that produces the incapacity," and the devise is not "to some individuals who are, and to some who are not, capable of taking." 2 Meriv. 388, 390. The rule of the common law, by which an estate devised must at all events vest within a life or lives in being and twenty-one years afterwards, has reference to time and not to persons. Even the "life or lives in being" have no reference to the persons who are to take, for the testator is allowed to select, as the measure of time, the lives of any persons now in existence; and the "twenty-one years afterwards" are not regulated by the birth or the coming of age of any person, for they begin, not with a birth, but with a death, and are twenty-one years in gross, without regard to the life, or to the coming of age, of any person soever. *Cadell* v. *Palmer*, 1 Cl. & Fin. 372; *S. C.* 7 Bligh N. R. 202.

It is doubtful, to say the least, whether the like effect can be attributed to the statute of Ohio, which has no reference to time, and only avoids devises to persons who are not either in being themselves, or the immediate issue or immediate descendants of persons in being, at the time of the making of the will. The devise of their parent's share to the children of any grandchild deceased before the time of division would seem to be valid as to those great-grandchildren whose parent, a grandchild of the testator, was living at the time of his death, because they would be "immediate issue" of a person in being at that time; and valid also to any great-grandchildren, whose parent, though born after the testator's death, had died before their grandparent, a child of the testator, because they would be, if not "immediate issue," certainly "immediate descendants," of that child, who was in being at that time; and invalid as to those great-grandchildren only, whose parent (as in the case of Mrs. Madeira, daughter of the testator's child Mary Trimble), born since the testator's death, died after their grandparent, and who, therefore, by reason of the interposition of the life of their parent, were neither "immediate issue" nor "immediate

descendants " of a person in being when the testator died. See *Stevenson* v. *Evans*, 10 Ohio St. 307; *Turley* v. *Turley*, 11 Ohio St. 173.

But, however that may be, the conclusion, already announced, that the estate in remainder devised by Duncan McArthur was vested in all his grandchildren *per capita*, with an executory devise over of the shares of those only who should die, leaving issue, before the final division, removes all difficulty in the application of the statute to the shares devised to the plaintiffs, grandchildren of the testator; for the devise to grandchildren, immediate issue of persons in being at the making of the will, was clearly not prohibited by the statute; and, even under the English rule, the executory devise over of the shares of deceased grandchildren to their children, if void for remoteness, would not defeat the previous valid devise of a vested remainder to the grandchildren, nor alter the share which each living grandchild would take. *Cattlin* v. *Brown*, 11 Hare, 372; Lord Selborne, in *Pearks* v. *Moseley*, 719, 724, 725; *Goodier* v. *Johnson*, 18 Ch. D. 441.

The necessary conclusion is that these plaintiffs, being grandchildren of the testator, took equitable vested remainders under his will. But until the determination of the particular estate by the death of all the testator's children and the arrival at the age of twenty-one years of the youngest grandchild who reached that age, the legal estate in fee being in the executors, the grandchildren owning the equitable estate in remainder had no right to a conveyance of the legal title. The present bill, filed little more than a year after one of the plaintiffs, who was the youngest grandchild of the testator who lived to the age of twenty-one years, arrived at that age, must therefore be maintained, unless the title of the plaintiffs under the will of their grandfather has been defeated by the decree rendered in 1839, setting aside the will.

III. The proceedings relating to the will of Duncan McArthur were had under the statute of Ohio of February 18, 1831, the material provisions of which are as follows:

By section 7, a will bequeathing or devising any personal property or real estate may be brought by the executors, or by

any person interested therein, before the Court of Common Pleas, and the testimony of the, attesting witnesses reduced to writing, and if it shall thereupon appear that the will was duly executed, and that the testator was of full age and of sound mind and memory, and not under any restraint, the court shall order the will, together with the proof so taken, to be recorded. By section 13, the will is to be recorded in every county in which there is any land devised. By section 16, if the executor named in any will dies or refuses to act, or if no executor is named therein, the court may receive the probate of the will and grant letters of administration with the will annexed. The statute also contains the following sections:

"SECT. 20. If any person interested shall, within two years after probate had, appear, and by bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the last will of the testator or testatrix or not; which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court the power of granting a new trial, as in other cases; but if no person appear in that time, the probate shall be forever binding; saving also to infants, married women, and persons absent from the State, or of insane mind or in captivity, the like period after the removing of their respective disabilities."

"SECT. 22. Appeals may be had from the decision of the Court of Common Pleas to the Supreme Court, when any will or other matter relating thereto shall have been contested." 3 Chase's Statutes, 1786–1788.

The forms of procedure, thus prescribed with regard to the original probate of a will and the subsequent setting aside of the probate, are in some respects peculiar, and their effect has been fully defined by decisions of the Supreme Court of Ohio.

The original probate on the testimony of the attesting witnesses, under section 7, is analogous to the probate in England in common form. The subsequent proceeding by bill in equity, under section 20, to contest the validity of the will, is analogous to the probate in solemn form by the executor upon being cited in by the next of kin; and the jurisdiction exercised by the court and jury is virtually that of a court of probate.

Both stages of the proceedings extend to the real estate as well as to the personal property, differing in this respect from the former English probates. Upon the subsequent contest, as upon the original probate, the only issue is will or no will, and the court has not the powers of a court of construction, and has no authority to pass upon the question whether the devises in the will are void for remoteness. *Mears* v. *Mears*, 15 Ohio St. 90.

The form of issue being prescribed by the statute, no answer is necessary, and if one is filed, it cannot be read at the trial of the issue. *Green* v. *Green*, 5 Ohio, 278. The position of the parties on the record, as plaintiffs or defendants, is immaterial; all are actors; and if some of the heirs are made plaintiffs and some defendants, all have an equal right to contest the will. *Runyan* v. *Price*, 15 Ohio St. 1, 6; *Bradford* v. *Andrews*, 20 Ohio St. 208, 220.

The bill in equity is so far in the nature of an appeal from the original probate, that the same issue is to be tried anew. *Haynes* v. *Haynes*, 33 Ohio St. 598, 618. But, strictly speaking, it is an original proceeding on the chancery side of the Court of Common Pleas, and does not, until final decree, vacate or affect the probate. "The statutory contest of a will lacks the essential elements of an appeal. It has not the same parties as in the court below. In the latter, in fact, it is purely *ex parte*, while in the Common Pleas it is *inter partes.*" *Bradford* v. *Andrews*, 20 Ohio St. 222. The original probate cannot be impeached, except in the form of proceeding given by the statute. *Swazey* v. *Blackman*, 8 Ohio, 5, 19; *Bailey* v. *Bailey*, 8 Ohio, 239, 246; *Mosier* v. *Harmon*, 29 Ohio St. 220. Even while such a proceeding is pending, and until set aside by the final decree therein, the probate is conclusive evidence of the validity of the will, as against all persons, in a collateral suit. *Brown* v. *Burdick*, 25 Ohio St. 260.

In a proceeding under the statute to contest the validity of a will, it is error to render final judgment upon a demurrer to the answer; because the provision of the statute, requiring an issue to be made up and tried by a jury, is imperative in its terms, and "was deliberately enacted with a view to prevent

a disposition of cases for the contest of wills upon the mere consent or acquiescence of parties in any form." *Walker* v. *Walker*, 14 Ohio St. 157, 176.

If a bill to contest the validity of a will is seasonably filed by an infant heir who is within the saving clause of the statute, and there is no defect of parties defendant, and the instrument is found to be no will, the proper decree is to annul the whole order of probate. *Meese* v. *Keefe*, 10 Ohio, 362. But persons claiming under the will admitted to probate, who are not made defendants to the bill to set it aside, are not bound, or their rights affected, by the decree upon that bill; and may treat it as a nullity, and maintain actions, against any one claiming under it, for lands devised to them by the will as originally admitted to probate. *Holt* v. *Lamb*, 17 Ohio St. 374.

The case of *Holt* v. *Lamb*, just referred to, decided in 1867, has so important a bearing on the case at bar that it will be appropriate to state it with some fulness. Sarah Stevenson devised land to her brother George for life, and after his death to be sold and divided between his four daughters, and appointed him her executor. Upon a bill in chancery filed under the statute against him and another brother by the other brothers and sisters and heirs at law of the testatrix (to which those daughters, the devisees in remainder, were not made parties), alleging that the will was not duly executed and that the testatrix was of unsound mind, and an answer filed by him denying these allegations, the court, in 1826, without framing or submitting any issue to a jury, entered a decree setting aside the will. In 1827, upon a petition for partition between the brothers and sisters of the testatrix, the land was ordered to be sold, and was sold and conveyed to a stranger, who afterwards sold and conveyed it to another person. George died in 1863, and his four daughters with their husbands brought an action against the last purchaser and the heirs at law of the testatrix to recover the land.

That case was elaborately and learnedly argued, and the defence was rested on similar grounds to those taken in the case at bar. It was contended that the suit to contest the validity of the will was a proceeding *in rem;* that the plaintiffs were

not necessary parties to it; that they were parties by representation of George Stevenson, the executor, who appeared and filed an answer in the cause, and defended their interests; that if they should have been made parties, the omission to make them parties did not render the decree void against them, and could be availed of only by applying to the court in which that cause was pending to be made parties, or by proceedings in that court to impeach the decree for irregularity; and that they might not have been within the jurisdiction of the court and subject to its process, and after so great a lapse of time it must be presumed that the court for good reasons declined to order them to be brought in. 17 Ohio St. 381, 382.

But the Supreme Court of Ohio, after observing that it had been expressly decided in *Walker* v. *Walker*, above cited, that the omission of a jury rendered the decree at least voidable on appeal, and that it was unnecessary to determine whether that omission rendered the decree absolutely void, gave judgment in favor of the plaintiffs, upon the ground that, not having been made parties to the bill to set aside the will, their rights under the will as originally admitted to probate were not affected by the decree, and might be asserted in this action. Judge Welch, delivering the opinion of the whole court, said: " But whatever effect may be given to the decree, or to the verdict of a jury in such case, we have no hesitation in saying, that that effect must be confined to 'the parties' in the cause. The words '*the* parties,' in the section quoted, can have no other legitimate meaning than that of parties *to the proceeding*. This is their primary legal meaning, and that such is their import here is quite obvious, from their being used in connection with the subject of a 'bill in chancery,' which, of itself, implies proper parties. That meaning is made still more obvious from the fact, that to give the words any other meaning would do injustice, by depriving persons in interest of a day in court. The meaning cannot be *parties in interest*, because such had been spoken of before as 'persons interested.' And in the subsequent clause, where the effect of the probate is declared, it is said it 'shall be forever binding,' without naming any parties upon whom it is to be so binding. If the same meaning was

intended in both places, why were different forms of expression employed? Why use the words 'between the parties' in the one case, and omit them in the other? It seems to us quite plain that it was because the intention was to *express*, what, in fact, ought to be *implied* in all proceedings in 'chancery,' that none but 'the parties' to the proceeding were to be bound thereby." "The decree setting aside the will, if binding at all, was binding only '*between* the parties;' and it binds those parties by way of *estoppel*. Although the will may be, *in fact,* a lawful, valid will, the parties to the decree are estopped by it from *asserting* or proving it to be such will. But the plaintiffs are not so estopped. As to them, it is a valid and subsisting will. They are still estopped by the *probate* from *denying* that it is such will. It is to them as though the chancery case had never been commenced. Their rights stand wholly unaffected by the proceeding." 17 Ohio St. 385–387.

In *Bradford* v. *Andrews*, above referred to, decided in 1870, it was held that where a proceeding to contest the validity of a will was commenced, within the statutory period of limitation, by some of the heirs only, the right of action was saved to other heirs who were ultimately made parties, and who by their answers joined in the prayer to set aside the will, although they were not brought into the case until after the period of limitation had expired. In the opinion of the court, also delivered by Judge Welch, it was said: "If any person interested appears, and in good faith files his petition for a contest, the statute entitles him to a trial and the verdict of a jury, touching the validity of the will; and that verdict will be binding upon all parties who may be before the court as such at the time of its rendition. The interest of the parties is joint and inseparable. Substantially this is a proceeding *in rem*, and the court cannot take jurisdiction of the subject matter by fractions. The will is indivisible, and the verdict of the jury either establishes it as a whole, or wholly sets it aside. To save the right of action, therefore, to one is necessarily to save it to all. The case belongs to that class of actions where the law is compelled either to hold the rights of all parties in interest to be saved, or all to be barred."

It is contended by the defendants in the present case that this decision is inconsistent with that in *Holt* v. *Lamb*. But we perceive no inconsistency. Apart from the improbability that the court, speaking by the same judge as in *Holt* v. *Lamb*, only three years before, intended to overrule or to cast a doubt upon that case without mentioning it, the observation in the first sentence of the statement relied on, that the "verdict will be binding upon all parties who may be before the court as such at the time of its rendition," as well as the further explicit affirmation, already quoted, that the proceeding to set aside the will "is *inter partes*," clearly shows that the court had no thought of holding that any one, claiming under the will once admitted to probate, was bound by the decree setting it aside, who had not been made a party to the suit in which it was rendered. 20 Ohio St. 219, 222.

In *Reformed Presbyterian Church* v. *Nelson*, 35 Ohio St. 638, decided in 1880, in a proceeding by heirs at law, under the statute, to contest the validity of a will, the executors and all the devisees and legatees were made defendants, except one person to whom the will gave a silver watch; and it was held that the omission to make this legatee a party, before trying the issue and rendering the decree setting aside the will, was error, for which those who had been made defendants and taken part in the trial might obtain a reversal of the decree, although the objection was not taken below. The court said: "It is the duty of the plaintiff, instituting a suit to settle a controversy, to see that the necessary parties are brought before the court." And after referring, without intimating any doubt of the correctness of the decision therein, to *Holt* v. *Lamb*, as a case in which no question arose as to the decree being reversible in error, but the effect of the decree was drawn in question in a collateral suit, and in which it was held that the parties to the suit in which the decree was rendered were bound by the decree, and it was not void as to them, but that as to all other persons in interest the decree was void; the court observed that "as it was held to be void as to some of the persons in interest and binding as to others, in respect to the same property, it would seem to be necessarily erroneous

as to the parties to the suit;" and referred to the decision of the Court of Appeals of Kentucky in *Singleton* v. *Singleton*, 8 B. Monroe, 340, 356, as taking a different view of the effect of such a decree, and holding that the verdict must be binding upon all interested in the will, or not binding upon any, and yet recognizing the absence of a necessary party to the decree to be ground for its reversal on error. 35 Ohio St. 642–644.

The decision of the Supreme Court of Ohio in *Holt* v. *Lamb*, eighteen years ago, recognized by the same court thirteen years afterwards in *Reformed Presbyterian Church* v. *Nelson*, as establishing that under the statute of Ohio a decree setting aside a will was void as against all persons in interest who were not parties to the suit in which it was rendered, and never impugned or doubted in that State, must, upon a question of the construction of a statute of Ohio, the effect of the will of a citizen of Ohio admitted to probate in Ohio, and the title of land in that State, be accepted by this court as conclusive evidence of the law of Ohio, even if a different construction has been given to similar statutes by the courts of other States. *McKeen* v. *Delancy*, 5 Cranch, 22; *Polk* v. *Wendall*, 9 Cranch, 87; *Thatcher* v. *Powell*, 6 Wheat. 119; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Suydam* v. *Williamson*, 24 How. 427; *Christy* v. *Pridgeon*, 4 Wall. 196; *Williams* v. *Kirtland*, 13 Wall. 306. It is therefore unimportant to consider how far the terms of the statutes of other States, construed by the courts of those States in the cases cited by the defendants, corresponded to those of the statute of Ohio.

The case of *Fraser* v. *Jennison*, 106 U. S. 191, arose under a wholly different statute of the State of Michigan, providing for an ordinary appeal, which vacated the original probate; and the point decided by this court, in accordance with decisions of the Supreme Court of Michigan, was that on such an appeal, although taken by the heirs at law separately, the validity of the will was a single issue, as regarded all the parties who appeared and contested it.

The general rule in equity, in accordance with the fundamental principles of justice, is that all persons interested in the

object of a suit, and whose rights will be directly affected by the decree, must be made parties to the suit. Exceptions to this rule have been admitted, from considerations of necessity or of paramount convenience, when some of the persons interested are out of the jurisdiction, or not in being, or when the persons interested are too numerous to be all brought in. But in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all.

The plaintiffs in the present case, being as yet unborn, could not, of course, have been made actual parties to the suit in which the decree setting aside the will of their grandfather was rendered; and the question remaining to be considered is, whether there was such a virtual representation of their interests, that they are bound by the decree. This question cannot be satisfactorily or intelligibly treated without first recapitulating the facts.

The will was originally admitted to probate on the testimony of the attesting witnesses; letters testamentary were issued to the two surviving executors of the three named in the will, and to Mrs. Coons, a daughter of the testator, appointed by the Court of Probate, pursuant to the provisions of the will, in the place of the one who died before the testator; and the three executors so appointed were qualified and gave bond, and took upon themselves the executorship.

The bill in equity to contest the validity of the will was filed by Allen C. McArthur, one of the five surviving children and heirs at law of the testator, and afterwards the father of these plaintiffs. The defendants in that bill were the testator's four other surviving children and heirs at law, namely, James McD. McArthur, Mrs. Coons, Mrs. Anderson and Mrs. Trimble, and the husbands of Mrs. Anderson and Mrs. Trimble; all the children who had then been born of those four children of the testator, and who were all then under age, namely, three children of James McD. McArthur, one child of Mrs. Coons, one child of Mrs. Anderson, and one child, born pending the suit, of Mrs. Trimble; the son, daughter, and son-in-law of Mrs. Kercheval, a deceased daughter of the testator; the husband and three sons of Mrs. Bourne, another deceased daughter of the

testator; and Samson Mason and Samuel F. Vinton, as devisees in trust of lands not now in question.

The joinder, as defendants in that suit, of Mrs. Kercheval's and Mrs. Bourne's children, and of Mason and Vinton, trustees, is unimportant, and may be laid out of consideration; because the will gave to those children no estate in lands, in fee or for life, legal or equitable; and Mason and Vinton refused to accept their trust, and by answer formally disclaimed all interest in the lands devised to them.

No executor and general trustee under the will was made a defendant in the capacity of executor and trustee. The three executors who had previously qualified and acted had resigned, and their resignations had been accepted by the Court of Probate; two of them a few days before the bill was filed, and the third while it was pending; and no successor of either, and no administrator with the will annexed, was appointed.

The only parties to that suit, then, so far as is material to the question before us, were a son and heir at law of the testator, as complainant, and the other four children and heirs at law, and the grandchildren then in being, each a minor child of one of those four children, as defendants. The bill alleged that these were the only persons specified in the will or having an interest in it, and were the only heirs and personal representatives of the testator. That all the heirs at law were before the court is true, for the five children (with the Kercheval and Bourne grandchildren) were the heirs at law. But, according to the will, the children, as well as the grandchildren, took merely equitable interests. To none of them was any legal title devised. The five present plaintiffs, children of the complainant in that suit, as well as the children afterwards born of the testator's other surviving children, all grandchildren of the testator, and entitled under the will to share with his other grandchildren, were not parties, and, being yet unborn, could not be personally made parties. And although the testator, to secure the interests of all his children and grandchildren, under the will, and, as he declared, to prevent them from being defrauded or imposed upon, had devised the legal title in fee to his executors and their successors, and committed

to them the execution of the trusts which he created, yet no personal representative of the testator, no executor or trustee appointed under the will, and no administrator with the will annexed, was a party to the proceeding at the time of the trial of the issue and the rendering of the final decree setting aside the will and annulling the probate.

The only parties to that proceeding, who were of age and capable of representing themselves, were the heirs at law, interested to set aside the will, and one of whom, afterwards father of the present plaintiffs, filed the bill for that purpose. The guardian *ad litem*, appointed to represent the opposing interest, under the will, of each minor grandchild then in being, was either its parent, interested as an heir at law, and as a party to the suit in his own right, to defeat the will, or was the husband of such a parent and heir at law. Each of the persons so appointed confessed in the answer filed in his own behalf all the allegations of the bill, and in his answer as guardian neither admitted nor denied those allegations. All the appointments of the guardians *ad litem* were made, all the answers were filed, and the issue to the jury was ordered, in that suit, and the resignation of the sole remaining executrix (who was also one of the heirs at law and guardians *ad litem*) was tendered and accepted in the court of probate, on one and the same day, within a week before the verdict and final decree.

The charges, made in the present bill, of actual fraud and conspiracy in procuring that decree, having been denied in the answers, and the plaintiffs, by setting down the case for hearing upon bill and answers, having admitted the truth of all statements of fact in the answers, must be taken to be disproved. Those who took part in obtaining that decree may have thought that they were doing the best thing for all persons interested in the estate. But it is impossible to read the record of that case without being satisfied that the verdict and decree were entered without any real contest, and that the heirs at law, whose interest it was to set aside the will, in fact controlled both sides of the controversy: the attack upon the will, as heirs and as parties in their own right; the defence of the will, as guardians *ad litem* of the only devisees brought before the court.

The appointment of persons, having adverse interests, to be guardians *ad litem* of the grandchildren then living and made parties defendant, may, so far as those parties were concerned, have been a mere irregularity in the mode of proceeding, for which they could not afterwards collaterally impeach the decree. *Colt* v. *Colt,* 111 U. S. 566. But neither the living grandchildren, nor the guardians appointed to represent them, could represent the estate devised by the testator to his executors in trust for unborn grandchildren and great-grandchildren.

In suits affecting the rights of residuary legatees or of next of kin, the general rule is that all the members of the class must be made parties. *Davoue* v. *Fanning,* 4 Johns. Ch. 199; *Dehart* v. *Dehart,* 2 H. W. Green (N. J.) 471; *Hawkins* v. *Hawkins,* 1 Hare, 543, 545 and note; Calvert on Parties (2d ed.), 49, 237. Where they are numerous, and only some of them, together with the executor and trustee under the will, are made parties, the court, upon being satisfied that it has a sufficient number before it to secure a fair trial of the question at issue, may hear the cause. *Bradwin* v. *Harpur,* Ambler, 374; *Harvey* v. *Harvey,* 4 Beav. 215, and 5 Beav. 134. But it would seem that the decree must be without prejudice to the rights of those who are not made parties, and who do not come in before the decree. *Harvey* v. *Harvey,* 5 Beav. 139; *Willats* v. *Busby,* 5 Beav. 193, 200; *Powell* v. *Wright,* 7 Beav. 444, 450; Calvert on Parties, 72; *Hallett* v. *Hallett,* 2 Paige, 15; Rule 48 in Equity, 1 How. lvi. And where a suit is brought by or against a few individuals as representing a numerous class, that fact must be alleged of record, so as to present to the court the question whether sufficient parties are before it to properly represent the rights of all. *Lanchester* v. *Thompson,* 5 Madd. 4, 13; Calvert on Parties, 44, 169.

In the proceeding to contest the validity of Duncan McArthur's will, on the contrary, so far from the attention of the court being called to any such question, it was positively alleged in the bill, and not contradicted in any of the answers, that those named as parties in the bill were the only persons specified in that will, and the only persons having an interest in it. Under the Ohio statute and decisions, the court had

nothing to do with the construction or the legal effect of the provisions of the will, but had only to try the question of will or no will as between the parties before it, and with no effect upon the rights of those not made parties. The rights of those infant grandchildren who were made defendants, to show cause against the decree, were saved by the express terms of the statute and of the decree itself until their coming of age and for six months afterwards; and no provision was made for the preservation of the rights of after-born grandchildren.

But the graver objection is that at the time of rendering the decree the court had before it no one representing the office of the executors, or the trust estate devised to them.

A trustee who has large powers over the trust estate, and important duties to perform with respect to it, is a necessary party to a suit brought by a stranger to defeat the trust, and often sufficiently represents the beneficiaries. Calvert on Parties, 273; *Kerrison* v. *Stewart*, 93 U. S. 155, 160; *Campbell* v. *Watson*, 8 Ohio, 498. Where such a trustee for a married woman was not made a party, Mr. Justice Miller, delivering the judgment of this court reversing the decree, said: "How the decree can clear the property of this trust without having the trustee before the court it is difficult to see. This was the object of the suit; but how can it be made effectual for that purpose in the absence of the person in whom the title is vested?" *O'Hara* v. *MacConnell*, 93 U. S. 150, 154.

When a will has been once admitted to probate, the estate, so long as the probate remains unrevoked, can only be administered by the executor or by an administrator with the will annexed. The executor is the principal and the necessary representative of the estate vested in him, and of all those interested in it; "the executor," said Lord Hardwicke, "in all cases sustaining the person of the testator, to defend the estate for him, creditors and legatees." *Peacock* v. *Monk*, 1 Ves. Sen. 127, 131. By the settled doctrine of the English ecclesiastical courts, in any proceeding to contest the probate or the rejection of a will, or to compel probate in solemn form, the executor is a necessary party, and, unless fraud or collusion is suggested, the only party to represent the will. The executor, in the words

of Sir John-Nicholl, "*prima facie* is to be considered as *pars principalis* or *legitimus contradictor ;*" *Wood* v. *Medley,* 1 Hagg. Eccl. 645, 668; and, as observed by Sir Herbert Jenner, "represents and is the protector of the legatees under the will, being specially entrusted by the deceased with the care and management of his property and to see his intentions carried into effect." *Hayle* v. *Hasted,* 1 Curt. Eccl. 236, 240, 241. When there has been a probate in common form and there is no executor, the administrator with the will annexed is the proper party to be cited to prove the will in solemn form or to show cause why an intestacy should not be declared. *Gascoyne* v. *Chandler,* 2 Cas. temp. Lee, 241.

By the devise in fee to these executors, their appointment by the Court of Probate, and their acceptance of the trust, the legal title in the real estate under the will vested in them. The subsequent acceptance by that court of their resignation of the office of executors no doubt discharged them from the performance of the duties of executors and trustees under the will. But the legal title in the real estate, which had once vested in them, could not be divested without a conveyance, or a decree of a court of chancery, or an appointment by the Court of Probate of new executors and trustees in accordance with the will. At common law, a conveyance, sanctioned or ordered by a court of competent jurisdiction, or at least a new appointment pursuant to the instrument by which the trust was created, would be necessary to divest the title of each trustee ; and no statute or decision in Ohio, establishing a different rule in this respect, has been brought to our notice. The three executors and trustees who had once accepted and acted as such, therefore, still held the legal title. *In re Van Wyck,* 1 Barb. Ch. 565, 570 ; *Drury* v. *Natick,* 10 Allen, 169, 183 ; *Wooldridge* v. *Planters' Bank,* 1 Sneed, 296 ; 2 Washburn on Real Property (4th ed.) 512, 513. And as holders of that title they were necessary parties to the suit. *Adams* v. *Paynter,* 1 Collyer, 530, 534.

But even if the mere legal title could be deemed, upon the acceptance by the Court of Probate of the resignation of two of the executors and trustees, to have vested in the remaining

one, Mrs. Coons, and upon the acceptance of her resignation to have vested in the heirs at law, the more serious difficulty remains.    The heirs did not succeed to the office of executors, and neither Mrs. Coons after her resignation, nor all the heirs, could represent the testator's will, or the trust created by it, or the beneficiaries of that trust.    The heirs were not alleged in the bill to be trustees, were not made parties as trustees, did not answer as trustees; but were actors in support of their individual rights only, asserting, one of them by allegations in his bill, and the others by confession in their answers of those allegations, a title adverse to the will and to the trusts created by it.

The resignation of the persons who had been appointed executors and trustees did not dispense with the presence of representatives of the testator and of the trust estate.    It was necessary that others should be appointed in their stead to represent the estate devised to the executors in trust for the protection of the *cestuis que trust* designated in the will, and especially the interests of those who might be born in the future, and who could not be otherwise sufficiently represented.

No additional force is given to the decree, rendered without having any such representatives before the court, by the allegation in that bill that no persons could be found whom the court was willing to appoint executors and who were able to give the requisite bonds, or by the allegation in the answer of Mrs. Coons that one reason for her resignation of the office of executrix was the impossibility of procuring suitable associates. Those were wholly irrelevant allegations, which the court, sitting in chancery to try the single issue of the validity of the will, had no authority to pass upon, or to assume to be true. The power and the duty, upon any vacancy in the office of executors or trustees under a will, to appoint new executors or trustees, or administrators with the will annexed, was in the court acting strictly as a court of probate.    Statutes of Ohio of March 12, 1831, § 22, and February 18, 1831, §§ 16, 25 ; 3 Chase's Statutes, 1779, 1787, 1788.    The alleged impossibility of finding proper persons to accept the office of executors

affords no more excuse for holding a decree binding upon persons not otherwise represented, than it would for disregarding a will which had been admitted to probate, and settling the estate as if the deceased had died intestate.

Nor can we doubt that the court, in the exercise of the appropriate branch of its jurisdiction, might in its discretion have granted administration limited to the single object of defending the will and the probate against the bill in equity of the heirs. Courts vested with the jurisdiction of granting letters testamentary and of administration have the inherent power of granting a limited administration, whenever it is necessary for the purposes of justice ; as, for instance, *durante minore ætate,* while the executor named in the will is under age; *durante absentia,* when he is out of the jurisdiction and therefore has not taken out letters testamentary ; or *ad litem,* to defend a suit in chancery while the probate of a will is under contest; and the powers exercised by the English courts in this respect appertain to the courts of like jurisdiction in this country, although not specified in the statutes under which they act. *Davis* v. *Chanter,* 2 Phillips, 545, 550, 551 ; 1 Williams on Executors (7th ed.) 479, 502, 523, 524; *Griffith* v. *Frazier,* 8 Cranch, 9, 26 ; *Martin* v. *Dry Dock Co.,* 92 N. Y. 70 ; *McNairy* v. *Bell,* 6 Yerger, 302 ; *Jordan* v. *Polk,* 1 Sneed, 429, 434.

These defendants rely on *Andrews* v. *Andrews,* 7 Ohio St. 143, as showing that to a bill in equity by the heirs at law under the Ohio statute to set aside a will which has been admitted to probate, the executors are not necessary parties. But in that case, a will bequeathing the bulk of the testator's property to certain charitable corporations having been set aside upon a bill by the heirs against the executors and the residuary legatees, the only point decided was that the executors were not bound to assume the burden of the defence, or entitled to charge the expense thereof to the estate; and the court, in delivering judgment, said that, in analogy to ordinary cases in chancery, it had been the general, and perhaps uniform, practice to make the executors, as well as legatees and devisees, parties defendant, and that, " granting the propriety, and even the necessity, of the practice," it did not follow that the execu-

tor was therefore bound to take upon himself the burden of
the contest. 7 Ohio St. 151. The court thus recognized, what
is indeed self-evident, that the question whether the executor is
bound to make an active defence at the expense of the estate
is wholly different from the question whether he must be made
a party, and so have an opportunity to defend the interests
which he represents. In later cases in that State, the practice
of making the executor a party has been followed, and it has
never been intimated that his presence could be dispensed with,
although he has been held not to be of himself a sufficient rep-
resentative of the devisees and legatees to make the decree
binding on them. *Holt* v. *Lamb*, 17 Ohio St. 374, and *Re-
formed Presbyterian Church* v. *Nelson*, 35 Ohio St. 638,
already cited. But costs in probate cases generally rest in the
discretion of the court, and are often not allowed even to the pre-
vailing party. *Summerell* v. *Clements*, 32 Law Journal (Prob.)
33 and note; *Nichols* v. *Binns*, 1 Sw. & Tr. 239; *Mitchell* v.
*Gard*, 3 Sw. & Tr. 275; *Davies* v. *Gregory*, L. R. 3 P. & D.
28; *Mumper's Appeal*, 3 W. & S. 441; *Chapin* v. *Miner*, 112
Mass. 269. In *Andrews* v. *Andrews*, no trust was created by
the will; but the bequest was outright to existing corporations,
themselves parties to the suit, and capable of representing their
own interests; and under such circumstances there would seem
to have been no reason why the executor should have incurred
any expense in the matter. *Dyce Sombre* v. *Troup*, Deane, 22,
119, 120; *S. C.* on appeal, *nom. Prinsep* v. *Dyce Sombre*, 10
Moore P. C. 232, 301–305.

The cases in courts of general chancery jurisdiction, cited in
behalf of the defendants, are clearly distinguishable from the
case before us, and naturally range themselves in several
classes.

Some of them were of mere changes of investment, leaving
undiminished the interests of all parties in the property in its
new form. Such were *Sohier* v. *Williams*, 1 Curtis, 479; *Faulk-
ner* v. *Davis*, 18 Gratt. 651; and *Knotts* v. *Stearns*, 91 U. S.
638. To the same class belong suits for partition, which are
either for a division in severalty of lands before held in com-
mon, or else for a sale of the whole land, and a division or in-

vestment of the proceeds for the benefit of those who, but for the sale, would have had interests in the land. In the case of a strict partition, by division of the land itself, it is sufficient to make the present owner, or, in some cases, the tenant for life of each share, a party, because the interest of those who come after him is not otherwise affected than by being changed from an estate in common to an estate in severalty. *Wills* v. *Slade*, 6 Ves. 498; *Gaskell* v. *Gaskell*, 6 Sim. 643; *Clemens* v. *Clemens*, 37 N. Y. 59; Calvert on Parties, 60, 259. In the case of a partition by sale of the land, and a division or investment of the proceeds according to the interests in the several shares, the interests of all persons in the proceeds correspond to their respective interests in the land, and are secured by the decree of sale. *Mead* v. *Mitchell*, 17 N. Y. 210; *Basnett* v. *Moxon*, L. R. 20 Eq. 182. But a decree for partition of either kind, which cuts off remaindermen, not then *in esse*, from having, when they come into being, any interest in either land or proceeds, does not bind them. *Monarque* v. *Monarque*, 80 N. Y. 320; *Downin* v. *Sprecher*, 35 Maryland, 474.

Another class of cases is that of creditors, who are entitled to present payment of their debts, whoever may be the future owner of the estate. For instance, in a bill to enforce a debt charged upon real estate devised to one for life, with contingent remainder to his unborn son, the executor and the tenant for life are sufficient parties, because, as was said long ago by Lord Hardwicke, if there is no one in whom the estate of inheritance is vested, "it is impossible to say the creditors are to remain unpaid and the trust not to be executed until a son is born. If there is no first son in being, the court must take the facts as they stand." *Finch* v. *Finch*, 2 Ves. Sen. 491; *Baylor* v. *Dejarnette*, 13 Gratt. 152, 168. See also *Goodchild* v. *Terrett*, 5 Beav. 398.

In some other cases, when all the interests are legal and not equitable, the owner of the first estate of freehold, representing the whole estate, and identified in interest with all who come after him, sufficiently represents those yet unborn. In the case of an estate tail, for instance, Lord Redesdale held it to be sufficient, in order to bind contingent remaindermen, to bring

before the court the first tenant in tail (although an infant, incapable at law of barring remaindermen), and if no tenant in tail in being, the first person entitled to the inheritance, and if no such person, then the tenant for life. But the reason assigned by that great master of equity pleading was, "that where all the parties are brought before the court that can be brought before it, and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive." *Giffard* v. *Hort*, 1 Sch. & Lef. 386, 408; Calvert on Parties, 55–60. The necessity of the case being the only reason for this, it follows that where the successive estates are equitable, and supported by a legal estate devised in trust, the trustees also are necessary parties. *Hopkins* v. *Hopkins*, West Ch. 606, 619; *S. C.* 1 Atk. 581, 590; *Cholmondeley* v. *Clinton*, 2 Jacob & Walker, 1, 133; *Mullins* v. *Townsend*, 5 Bligh N. R. 567, 591; *S. C.* 2 Dow & Cl. 430, 438; *Ex parte Dering*, 12 Sim. 400; Calvert on Parties, 253, 327.

So in the case of a bill in equity for the construction of a will, the court, from necessity, in order to protect the trustee and to give proper instructions as to the execution of the trusts, is sometimes obliged to settle the validity and effect of contingent limitations even to persons not in being. But, as was said by Mr. Justice Grier in *Cross* v. *De Valle*, 1 Wall. 1, 16, "It is this necessity which compels the court to make such cases exceptions to the general rule;" and, as Chancellor Walworth observed in *Lorillard* v. *Coster*, 5 Paige, 172, 215, there cited, "the executors and trustees must be considered as the legal representatives of the rights of persons not yet *in esse*." And they are necessary parties. *Nonnelay* v. *Balls*, 6 Jur. 550. In *Palmer* v. *Flower*, L. R. 13 Eq. 250, cited for the defendants, in which the court construed a will without bringing in a child born pending the suit, who had like interests with parties already before the court, the trustee was a party.

In the cases in which bills in equity, without an executor or administrator being made a party, have been maintained while the probate or the administration was being contested in the ecclesiastical court, the court of chancery exercised a jurisdic-

tion, concurrent with that of the ecclesiastical courts in appointing special administrators, for the simple purpose of preserving the property until there was some person entitled to receive it. *Montgomery* v. *Clark*, 2 Atk. 378; *King* v. *King*, 6 Ves. 172; *Atkinson* v. *Henshaw*, 2 Ves. & B. 85; *Watkins* v. *Brent*, 1 Myl. & Cr. 97; *Whitworth* v. *Whyddon*, 2 Macn. & Gord. 52; Statute of Ohio of March 12, 1831, § 8, 3 Chase's Statutes, 1777. Under like circumstances, a bill of discovery of real assets can be maintained only to preserve a debt. *Conway* v. *Stroude*, Freem. Ch. 188; *Plunket* v. *Penson*, 2 Atk. 51.

In a suit in which a general administration of the assets of a deceased person is necessary to the relief prayed, an allegation that a suit is pending in the ecclesiastical court for a grant of administration may prevent the bill from being held bad on demurrer; because in equity it is sufficient if administration is obtained at any time after bill filed and before a hearing upon the merits. *Penny* v. *Watts*, 2 Phillips, 149, 154; *Fell* v. *Lutwidge*, Barnard. Ch. 319, 320; *Humphreys* v. *Humphreys*, 3 P. Wms. 349, 351; *Simons* v. *Milman*, 2 Sim. 241; *Beardmore* v. *Gregory*, 2 Hem. & Mil. 491. But it has been uniformly held that such a suit cannot proceed to a final decree, even when the executor is out of the jurisdiction, or no executor has been appointed, until an appointment of a personal representative has been made within the jurisdiction, by the competent court; and it appears to be settled in England that this must be a general administrator, unless the court of probate, upon application made to it for administration, insists on appointing an administrator *ad litem* only. Mitford Pl. (4th ed.) 177, 178; *Tyler* v. *Bell*, 1 Keen, 826, and 2 Myl. & Cr. 89; *Green* v. *Lane*, 16 Jur. 1061; *Devaynes* v. *Robinson*, 24 Beav. 86, 98; *Cary* v. *Hills*, L. R. 15 Eq. 79; *Rowsell* v. *Morris*, L. R. 17 Eq. 20; *Dowdeswell* v. *Dowdeswell*, 9 Ch. D. 294.

In England, while the probate of wills in the ecclesiastical court was conclusive as to the personal estate only, a court of chancery, upon a bill by creditors for the sale of real estate for the payment of debts, or by beneficiaries to enforce trusts created by the will, might indeed render a decree as between

the parties before it ; and sometimes, as incident to such decree, would declare that, as between them, the will was established. But no decree establishing the will in the absence of the heir at law, even if out of the jurisdiction or not to be found, could bind him. *French* v. *Baron*, 2 Atk. 120 ; *S. C.* 1 Dick. 138 ; *Banister* v. *Way*, 2 Dick. 599; *Smith* v. *Hibernian Mining Co.*, 1 Sch. & Lef. 238, 241 ; *Fordham* v. *Rolfe*, Tamlyn, 1, 3, and note; *Waterton* v. *Croft*, 6 Sim. 431; Mitford Pl. 173 ; Calvert on Parties, 218–220 ; 1 Maddock Ch. Pract. 604; Story Eq. Pl. § 87 ; Rule 50 in Equity, 1 How. lvi.

Executors and trustees, appointed by the testator to perform the trusts of the will and to protect the interests of his beneficiaries, are as necessary parties to a proceeding to annul a probate, as the heirs at law are to a suit to establish the validity of a will. And upon a review of the cases no precedent has been found, either in a court of probate or in a court of chancery, in which a decree disallowing a will, rendered in a suit brought to set it aside, or to assert an adverse title in the estate, without making such executors, or an administrator with the will annexed, a party to the suit, has been held binding upon persons not before the court.

As under the statute of Ohio, as construed by the Supreme Court of that State, a decree annulling the probate of a will is not merely irregular and erroneous, but absolutely void, as against persons interested in the will and not parties to the decree, and as these plaintiffs were neither actually nor constructively parties to the decree setting aside the will of their grandfather, it follows that that decree is no bar to the assertion of their rights under the will. To extend the doctrine of constructive and virtual representation, adopted by courts of equity on considerations of sound policy and practical necessity, to a decree like this, in which it is apparent that there was no real representation of the interests of these plaintiffs, would be to confess that the court is powerless to do justice to suitors who have never before had a hearing.

The subsequent partition among the heirs at law, and the conveyances by them to third persons for valuable consideration, cannot affect the title of these plaintiffs. All the facts

upon which that title depends appeared of record in judicial proceedings, of which all persons, whether claiming under or adversely to the will, were bound to take notice. The will and the original probate thereof were of record in the county in which the probate was granted. The will as there recorded showed the estate devised to these plaintiffs and to the executors in trust for them. The recording of the will and probate in any other county in which there was land devised was required for the purpose of evidence only, and not to give effect to the probate. *Hall* v. *Ashby*, 9 Ohio, 96, 99 ; *Carpenter* v. *Denoon*, 29 Ohio St. 379, 395. The record of the decree setting aside the will showed that neither these plaintiffs, nor any executors or successors of executors in the trust, were parties to the suit ; and consequently that the plaintiffs' title under the will, as originally admitted to probate, was not affected by that decree. The subsequent purchasers must therefore look to their vendors, and have no equity as against these plaintiffs. Even a purchaser of land sold under a decree in equity, though he is not affected by mere irregularity in the mode of proceeding against the parties to the suit in which the decree is rendered, yet, as has been observed by Lord Redesdale, and repeated by the Supreme Court of Ohio, is to see that all proper parties to be bound are before the court, and that taking the conveyance he takes a title that cannot be impeached *aliunde*. *Bennett* v. *Hamill*, 2 Sch. & Lef. 566, 577 ; *Massie* v. *Donaldson*, 8 Ohio, 377, 381.

The present suit does not seek to annul or impeach a decree of a State court granting or refusing probate of a will, but to assert the title of the plaintiffs under a probate granted according to the law of the State, and which, by that law, stands unaffected, as to them, by the subsequent proceedings between other parties, and conclusively establishes their title. The case thus avoids the difficulties considered in *Ellis* v. *Davis*, 109 U. S. 485, and cases there cited.

*The decree of the Circuit Court must therefore be reversed, and the case remanded for further proceedings in conformity with this opinion.*

Mr. Chief Justice Waite (with whom Mr. Justice Harlan concurred), dissenting.

Mr. Justice Harlan and myself are unable to agree to this judgment. In our opinion the decree of the Ross County Court of Common Pleas, setting aside the will of Duncan McArthur, is binding on the complainants in this case. The devise of the property in dispute was in its legal effect to a class of persons, that is to say, to the grandchildren of the testator, the lawful issue of his five surviving children, when the youngest or last grandchild should arrive at the age of twenty-one years. If a grandchild died before the division of the estate, leaving a child or children, his or her share was to go to his or her child or children. All the children of the testator, and all the grandchildren in being when the decree was rendered, were parties to the suit. Thus it appears that at the time of the decree all persons then in life of the class of devisees to which the complainants belong were in court and subject to its jurisdiction.

This court now decides that these grandchildren, living at the death of the testator, took in equity a vested remainder at once, subject to open and let in afterborn grandchildren. Such being the case, it seems to us that the grandchildren in whom such estate vested represented those to be born afterwards for all the purposes of a contest of the will under the Ohio statute governing that proceeding. At most, the executors and the executrix held only the naked legal title. The equitable title was in the grandchildren. Under these circumstances the failure to cause new executors to be appointed after the resignation of those who had legally qualified, and to bring them in as parties, is not, in our opinion, fatal to the decree. The entire equitable estate was represented by the grandchildren in being, and whatever is sufficient to bind them must, as we think, bind also those of the same class of devisees with themselves who were afterwards born.

The devise of the legal title was to the "executors and the successors of them." The two executors who qualified resigned their offices, and their resignations were accepted, before the suit was begun. Mrs. Coons, the executrix, did not resign until afterwards, and she was made a party to the suit both in her

representative and individual capacity. Before her resignation, and before the suit was begun, she had *succeeded* to all the rights of the executors in the property. She was the *successor* of the executors who had resigned, and as such alone represented the legal title. She continued a party to the suit until the final decree. It is difficult to see, therefore, why the naked legal title, which was all the executors took under the will, was not represented in the suit during the whole course of the proceeding.

But whether this be so or not is to our minds a matter of no importance. The suit was brought to contest the will. The grandchildren of the testator, the lawful issue of his five enumerated children, formed one class of beneficiaries provided for in the will. As a class, their interests were opposed to the contestants. Those of the class who were in being took the title as well for themselves as for those who should be afterwards born. The interests of those in being and those born afterwards were in all respects the same. It would seem, therefore, that whatever bound those who held the title should bind all those not then in being for whom they held it. Otherwise, as in Ohio, no suit can be brought to contest a will except within two years after probate, it is difficult to see how a will can be contested there when the devise is to a class of persons which may not be full until after that period has elapsed. It is no part of the duty of executors to defend a will against a contest. That is left to the devisees or those interested in sustaining the will. As this, in our opinion, disposes of the case, we have deemed it unnecessary to refer specially to any of the other questions which were presented for argument.

Mr. Justice Matthews, having been of counsel, did not sit in this case, or take any part in the decision.